**UNITED STATES of America, Plaintiff,**

v.

**Giuseppe PELLERITO, Defendant.**

**Crim. No. 87–685 (JAF).**

United States District Court,
D. Puerto Rico.

Nov. 9, 1988.

Guillermo Gil & Everett M. de Jesús, Trial Attys., U.S. Dept. of Justice, San Juan, P.R., for plaintiff.

Frank A. Rubino, Coconut Grove, Fla., Mark A. Cristini, New York City, Lydia

Lizarribar–Masini, San Juan, P.R., for defendant.

## EXPANDED OPINION AND ORDER

FUSTE, District Judge.

Defendant Giuseppe Pellerito ("Pellerito"), was indicted along with numerous other defendants, for his participation in a long-term, multistate conspiracy to possess with intent to distribute amounts of heroin. 21 U.S.C. §§ 841(a)(1) and 846. On the second day of trial, June 7, 1988, the court was informed that Pellerito wanted to change his plea to guilty as to count two naming him. Thereafter, the court held a change of plea hearing in accordance with Fed.R.Crim.P. 11. Eight weeks later, and prior to sentencing, Pellerito filed a motion seeking to withdraw the guilty plea. *See* Docket Document No. 900. The motion was filed on defendant's behalf by his fourth generation of attorneys, Frank A. Rubino, Mark Anthony Cristini, and Lydia Lizarribar. A hearing was held on August 24–26, 1988, wherein defendant testified in his own behalf. Testimony was given by attorney Ivan Fisher, who represented defendant from approximately April through June 1988, after Pellerito's original counsel, Marvin Segal, had withdrawn for unknown reasons. Also called as a witness was Fisher's successor, Emanuel Moore, who served as defendant's attorney at the time of trial and during the change of plea hearing of June 7, 1988. Former U.S. Attorney Julio Morales–Sánchez, who functioned as local counsel with both Fisher and Moore, additionally gave testimony at the plea withdrawal hearing of August 24–26, 1988. Based on consideration of the record and the evidence presented at the hearing, and for the reasons set forth by the court at the conclusion of the hearing, Pellerito's motion was denied. We now expand on the reasons behind our bench ruling.

We have set forth below the testimony and evidence of record at length, due to its legal significance in light of the applicable standards. We will first discuss the motion to withdraw guilty plea, including the grounds raised by the motion itself and during the course of the plea withdrawal hearing held August 24–26, 1988. We will next backtrack and set forth what transpired at the conference room hearing held prior to the commencement of trial on June 6, 1988. A discussion of the change of plea proceedings held on June 7, 1988, will follow. We will also review the plea withdrawal hearing, the legal standards applicable to defendant's request in light of the evidence received and, lastly, we will chart out our announced conclusion that defendant is bound by his plea of guilty in this case.

### *Motion to Withdraw Guilty Plea*

Defendant's motion alleges that Pellerito's execution of a guilty plea and concurrent waiver of his constitutional right to a jury trial was not made knowingly and intelligently. Such allegation is based upon a claim of ineffective assistance of counsel, which encompasses the theories that Pellerito was abandoned by Fisher, that Moore was unprepared to proceed through a full jury trial due to the fact that Moore assumed defendant's representation shortly before the trial date, and that Pellerito's decision to plead guilty was based upon erroneous facts presented to him by Moore. Pellerito's motion asserts that Fisher completely ignored defendant and the case, and that defendant was unable to locate Fisher, who was rumored to be in Hong Kong. It further claims that neither Fisher nor Moore showed defendant the discovery material. The motion states that Moore encouraged the defendant to plead guilty against his will and advised defendant that the plea would preclude defendant's indictment in other local or federal jurisdictions and preclude the seizure of any property owned by defendant in Puerto Rico. *See* Docket Document No. 900.

Defense arguments and testimony at the subsequent plea withdrawal hearing both clarified and embellished upon these grounds. Specifically, defendant argues that he misunderstood the consequences of the plea agreement. Pellerito alleges that he pled guilty because he erroneously understood that such plea would absolve him from any further criminal liability in the

jurisdictions set forth in the indictment, namely Puerto Rico, New York, New Jersey, and Florida. *See* Transcript of August 24, 1988, Plea Withdrawal Hearing (hereinafter referred to as "PWH"), Docket Document No. 1026, at 165–68. During the plea withdrawal hearing on August 25, 1988, Pellerito testified that he pled guilty to be "clean", and from the beginning had been willing to plead guilty if the government granted him immunity from further prosecution in those four jurisdictions. Pellerito stated that if, however, the plea only eliminated the Puerto Rico conspiracy count, then he was willing to fight the instant charge through a jury trial. *See* Excerpt of Hearing, August 25, 1988, Docket Document No. 1027, at 12, 16–17. Pellerito argued that he expected his attorneys to provide him with some type of "paper" verifying the grant of immunity and that the failure to receive such document inspired Pellerito's alternative demand to seek a withdrawal of the guilty plea. *See id.* at 11–14; PWH, Docket Document No. 1026, at 168–70.

The government argued that Pellerito received effective assistance of counsel and that he fully understood the consequences of the plea agreement. Additionally, the government argued that it would suffer prejudice by the withdrawal of Pellerito's guilty plea for various reasons. Certain items of evidence, including the heroin, have been destroyed. Documents, such as airline tickets and hotel records, had been returned to their owners. A number of witnesses are outside Puerto Rico, and it may not be possible to locate some of them, which would cause a tremendous disadvantage to the government. *See* PWH, Docket Document No. 1026, at 194–95.

### Conference Room Hearing

Prior to the commencement of trial on June 6, 1988, a conference was held on the record, in chambers. *See* Transcript of Conference Room Hearing, June 6, 1988, Docket Document No. 1025. Pellerito was represented at the hearing by attorneys Morales–Sánchez, Moore, and Moore's assistant, Mr. González. The government voiced a request that inquiry be made of both attorney Moore and Mr. Pellerito as to their independent beliefs on the subject of Moore's preparedness for trial. The government thereby sought to avoid a suspected future controversy on the matter, which it suggested might arise in the context of a proceeding under 28 U.S.C. § 2255. Mr. Moore mentioned his extensive criminal law experience and assured the court that despite the short notice between retainer and trial, he was well prepared to handle the case. He also confirmed that the defendant desired him to serve as his attorney. *See* Conference Room Hearing, Docket Document No. 1025, at 6–7. Defendant Pellerito was subsequently brought to the conference room and the following colloquy occurred:

THE COURT: I am the judge, and I have a question for you Mr. Pellerito. According to the records of the Court you have, now, three lawyers. You have, Juilo [sic] Morales–Sanchez, who is sitting with you. Mr. Ivan S. Fisher, who is still an attorney of record. In other words, he is still in the case. And then we have, also, Mr. Moore, Emanuel Moore, who is the gentleman sitting near the front of me.

DEFENDANT PELLERITO: Yes.

THE COURT: Are you satisfied with the representation they will give you in this case?

DEFENDANT PELLERITO: Yes.

THE COURT: You have no problem with that?

DEFENDANT PELLERITO: No problem.

THE COURT: Thank you very much. I just wanted to know that for sure.

DEFENDANT PELLERITO: Yes.

*See* Conference Room Hearing, Docket Document No. 1025, at 22. The conference room hearing thereupon concluded, and jury selection continued during the afternoon of June 6, 1988.

### Change of Plea Hearing

At the change of plea hearing held on

June 7, 1988,[1] we set forth the purposes of the Rule 11 hearing to defendant, which included the following admonition:

> THE COURT: Before I accept your plea, I would have to examine you under oath to determine whether your plea is a voluntary plea. That means whether you are pleading because you really want to plead, basically, with knowledge of consequences.

See Transcript of Change of Plea of Giuseppe Pellerito, June 7, 1988, Docket Document No. 944 (hereinafter referred to as COP). Subsequently, the following colloquy occurred:

> THE COURT: Very well. Do you feel competent to plead today?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Mr. Moore, do you think that Mr. Pellerito is competent to plead today?
>
> THE DEFENDANT [sic][2]: Yes, your Honor.
>
> THE COURT: Mr. Morales, do you believe that he is competent to plead today?
>
> MR. MORALES: Yes, your Honor, indeed.
>
> THE COURT: Mr. Jesus?[3]
>
> MR. DE JESUS: Yes, your Honor.
>
> THE COURT: Very well. Let me ask you this: Have you had ample opportunity to discuss this case with Mr. Moore and Mr. Morales–Sanchez?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And since I know that Mr. Morales–Sanchez has been in the case for a while, he has been your lawyer for a long time; Mr. Moore recently came into the case.
>
> THE DEFENDANT: Right.
>
> THE COURT: Are you satisfied with the case that Mr. Moore has done for you and Mr. Morales–Sanchez has done for you?
>
> THE DEFENDANT: Yes, I am.

> THE COURT: Do you feel they have discussed with you all the aspects of this case to your satisfaction?
>
> THE DEFENDANT: Repeat that again.
>
> THE COURT: Do you feel that the case has been discussed by them, with you, to your satisfaction?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Did you want anybody else to be your lawyer in this case or are you satisfied with them?
>
> THE DEFENDANT: I am satisfied with these two.
>
> THE COURT: With these two?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. You don't want Mr. Fisher to be your lawyer any more?
>
> THE DEFENDANT: Forget it.
>
> THE COURT: Forget it?
>
> THE DEFENDANT: Forget it.
>
> THE COURT: And what about this other lawyer that came in yesterday?
>
> THE DEFENDANT: well, I spent yesterday—
>
> THE COURT: What is the name?
>
> THE DEFENDANT: Christine [sic].
>
> THE COURT: Christine [sic]. Yes, do you want him to be here?
>
> THE DEFENDANT: No, I don't need it.
>
> THE COURT: You don't need it.
>
> THE DEFENDANT: I pled guilty; why do I need another lawyer for this?
>
> THE COURT: Well, you never know. I mean, you can have as many as you want. You feel satisfied you have Mr. Moore and Mr. Sanchez, both former U.S. Attorneys, etc.?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Very well. So in that sense you have no problem.
>
> THE DEFENDANT: No problem.

See COP, Docket Document No. 944, at 6–9.

We then fully explained to the defendant all of the rights involved in a trial by jury and Pellerito thereafter affirmed that he

---

1. Defendant Pellerito was offered the services of a court interpreter, which he refused.

2. The transcript should reflect that the response was made by Mr. Moore and not defendant.

3. Messrs. Everett M. de Jesús and Guillermo Gil are the trial attorneys for the Department of Justice in this case.

wanted to waive those rights and still wanted to plead guilty. COP, Docket Document No. 944, at 9–12. The discussion included the following colloquy:

THE COURT: Okay. Do you understand that if you go to trial, if you decide to go to trial, the witnesses for the government must come here to the Court and they must take the stand here and testify facing you, eye to eye, and they will be entitled, they will be cross-examined by the lawyers and the lawyers can object to evidence and they can object to documents. They can object to tapes; they can object to anything that they may have by way of evidence.

THE DEFENDANT: Right.

THE COURT: And they can, of course, present evidence on your behalf. They can give you a vigorous defense in all senses. Do you know that?

THE DEFENDANT: Yes.

THE COURT: And you want to waive that right?

THE DEFENDANT: Yes.

COP, Docket Document No. 944, at 10–11. The indictment was thoroughly reviewed, legal terms and applicable statutes were defined, and the consequences and potential penalties were detailed. COP, Docket Document No. 944, at 12–23. The defendant denied that he had been threatened or forced to plead guilty and agreed that he was pleading guilty out of his own free will. COP, Docket Document No. 944, at 20. The hearing continued with a discussion of the plea agreement and then Pellerito's affirmance of the offense for which he was pleading guilty, as follows:

MR. DE JESUS: Yes, your Honor. Very briefly, in exchange for Mr. Pellerito's guilty plea to the only count in the indictment against him, the government will make a specific recommendation of a term of imprisonment of not to exceed 18 years to be imposed here in this case. And will make no further allocution at the time of sentencing.

THE COURT: That is the only extent of the agreement?

MR. MOORE: Yes, sir.

MR. DE JESUS: That is it. I should clarify that the defendant is aware that the court is not bound by the recommendation and may impose up to the maximum of the 20 years, if he should so decide, or impose less or more of the 18 year recommendation if it so chooses.

THE COURT: Okay. Mr. Moore and Mr. Morales, do you agree that those are the terms that you negotiated with Mr. Gil and Mr. De Jesus?

MR. MORALES: Yes, your Honor.

THE COURT: Mr. Pellerito, is that what you negotiated with him?

THE DEFENDANT: Yes.

See COP, Docket Document No. 944, at 20–21. Defendant agreed that he knew that in addition, he was exposing himself to a maximum fine of up to $250,000. The court discussed with defendant our discretion in sentencing, and the hearing continued as follows:

THE COURT: Do you understand that if I decide to impose a sentence different from what has been recommended to the Court, you cannot withdraw your guilty plea? In other words if I decide to give you the maximum, for example, you cannot withdraw your guilty plea. That is it. You understand that part?

THE DEFENDANT: Yes.

THE COURT: Okay. This has been explained fully to you.

THE DEFENDANT: Yes.

THE COURT: Okay. Has anyone made any promise, other than the plea agreement, to induce you to plead guilty in this case? Has someone promised you something?

THE DEFENDANT: No.

THE COURT: No promises of any kind.

THE DEFENDANT: No promises.

See COP, Docket Document No. 944, at 22–23. The defendant then agreed that no prophecies or predictions had been made to him and that he was putting himself in our hands.

Thereafter, the following colloquy occurred concerning Pellerito's admission of the offenses that he committed:

THE COURT: Okay. And let me ask you this, now: What is it that you did.

THE DEFENDANT: I pled guilty to conspiracy enterprise in Puerto Rico, New York, New Jersey and Florida.

THE COURT: You are pleading guilty to, you are actually pleading guilty to what, again? Let me get it straight.

THE DEFENDANT: Conspiracy enterprise.

THE COURT: Conspiracy enterprise?

THE DEFENDANT: Right, in Puerto Rico, in New York.

THE COURT: Uh-huh.

THE DEFENDANT: New Jersey and Florida.

THE COURT: And would it be fair to say that, basically you are accepting that you distributed, you provided heroin to El Men to—

THE DEFENDANT: To conspiracy.

THE COURT: To conspiracy.

THE DEFENDANT: Yes.

THE COURT: To do this. Okay?

THE DEFENDANT: Yes.

THE COURT: Do you dispute the facts alleged in the count or in Overt Acts 1, 2, 17 and 18 and 19?

THE DEFENDANT: No.

THE COURT: Do you agree with those? The ones I read to you?

THE DEFENDANT: Count 2.

THE COURT: You agree with everything in that.

THE DEFENDANT: Yes, conspiracy, Count 2.

THE COURT: You agree with everything that is said there?

THE DEFENDANT: Yes, sir.

*See* COP, Docket Document No. 944, at 23–24. Both Mr. Moore and Mr. Morales then agreed that they had "no doubt" that Pellerito could be convicted on the basis of the government's evidence.

A proffer of evidence was then solicited from the government. The court instructed defendant that:

THE COURT: If he does not follow he should tell me.

MR. MORALES: May we just say so?

THE COURT: Up to now you have understood everything, right?

THE DEFENDANT: Yes.

MR. DE JESUS: Feel free to interrupt.

THE DEFENDANT: Okay.

*See* COP, Docket Document No. 944, at 25–26. Mr. Moore expressed interest in having the government set forth detailed evidence. Accordingly, Moore specifically questioned the government and elicited an extensive proffer. The evidence would involve testimony by Raymond Vega Cardozo, who met Pellerito on three separate occasions in New York to deliver monies to Pellerito, with the express intent of receiving shortly thereafter, amounts of heroin from other persons to deliver to Mr. Héctor Martínez in Puerto Rico for distribution. Cardozo would also testify to a similar transaction in Puerto Rico involving a person related to Pellerito, namely, Mr. Tabbita. A prior supplier and courier would testify that they lost their business with Mr. Martínez because of the relationship he established with Pellerito, also known as Joe El Italiano, in New York. Two other named witnesses would discuss their knowledge of the heroin sources of Mr. Martínez. Mr. Iván Claudio–Nazario would testify that he was introduced to Pellerito so that he could act as a carrier on future deliveries of heroin. Finally, the government proffered the corroboration of wire intercepts involving defendant, relating to the collection of monies from Martínez for heroin. Such tapes had been previously provided to the defense, and the court had listened to a number of the tapes to determine audibility. *See* COP, Docket Document No. 944, at 26–29. Although the defendant stated that he could not be in the jurors' heads, he agreed that this evidence, together with the tapes, was strong enough to make him decide to plead guilty, and that he still wished to plead. *See* COP, Docket Document No. 944, at 29–30. The court then accepted Pellerito's plea, after specifically finding that Pellerito was voluntarily pleading with full understanding of his right to a jury trial and the consequences of the change of plea. *See* COP, Docket Document No. 944, at 30–31.

*Plea Withdrawal Hearing*

The plea withdrawal hearing began on August 24, 1988, with testimony heard

from the defendant, Mr. Pellerito. During the course of the direct examination of Pellerito, the court reporter interrupted the proceedings to indicate that he was having problems understanding the English language responses of the defendant. Additionally, the court believed that the defense was attempting to raise the issue of Pellerito's understanding of the English language, which naturally would reflect upon his understanding of prior court proceedings. In order to preserve the record, the direct examination of Pellerito was temporarily suspended. Upon request of the other witnesses, and without any objection, the hearing proceeded with testimony of Attorneys Fisher, Moore, and Morales–Sánchez. Pellerito refused to waive his attorney-client privilege, even as to the issue of legal representation. Pellerito's testimony resumed on the next day, with defendant also covering the high points of the first day's testimony.

We proceed to discuss the plea withdrawal hearing, touching upon: a) Pellerito's understanding of court proceedings, b) representation by Attorney Fisher, c) representation by Attorney Moore, and d) the plea agreement.

### a) *Pellerito's Understanding of Court Proceedings*

At the plea withdrawal hearing, we indicated that the same interpreter who was made available at all times to assist defendant during trial and the change of plea would again be available, although defendant had informed the court on those prior occasions that he did not need the interpreter's assistance. Defense counsel Rubino then stated: "Well, that may have been the problem and he may not have understood the waiver." PWH, Docket Document No. 1026, at 5. The direct examination continued with defendant at times requesting translation of counsel's questions and at times answering in Italian. The majority of Pellerito's responses were made in English.

The court reporter interrupted the proceedings to inform the court that he was having trouble understanding, and, therefore, transcribing, the testimony. As we reiterated at the hearing, the court had absolutely no problem understanding the entirety of Pellerito's testimony. After a brief recess, we stated that there had been no problem of translation or transcription at the time of the plea, which was conducted entirely in English and transcribed by the same, top-rated, court reporter. Nevertheless, the court reporter is a native of Birmingham, Alabama, and was having some difficulties with accents and intonations. We explained that perhaps because Pellerito was nervous and under stress, he was speaking faster and switching often into Latin or Italian roots and conjugations, which caused the problems with the court reporter. *See* PWH, Docket Document No. 1026, at 30–35, 134–38. In light of this situation, and in order to preserve the record, the court secured another court reporter, with Spanish-speaking background, to transcribe the remainder of the testimony of Pellerito heard during the second day of the hearing, August 25, 1988.[4]

We instructed Attorney Rubino to stop coaching defendant to speak in Italian, and to permit Pellerito to answer and utilize the interpreter as he desired. *See* PWH, Docket Document No. 1026, at 4–6, 8, 11–12, 32–39. Thereafter, upon being admonished, Mr. Rubino assured the court that language, or Pellerito's understanding of English, a suspected motive in our own mind, was not being raised as an issue or possible reason to invalidate Pellerito's plea of guilty. PWH, Docket Document No. 1026, at 36–39, 143–50.

### b) *Representation by Attorney Fisher*

While Pellerito was detained in prison in Puerto Rico pending trial, he hired Mr. Fisher, after a meeting with Fisher and his companion, attorney Bronson. Mr. Fisher testified that although he and Mr. Bronson are not law partners, they explained to defendant that they were co-lawyers in the

---

4. The record will reflect that any lost transcript could have been recuperated by having received the testimony for a second time. This we offered, but attorney Rubino insisted that all was fine.

case. PWH, Docket Document No. 1026, at 47. Attorney Morales–Sánchez was invited by Fisher and Bronson to meet with Pellerito, and Morales–Sánchez was subsequently retained as local counsel. PWH, Docket Document No. 1026, at 48–50, 105–06. Fisher, Bronson, and Morales–Sánchez met with defendant a number of times, and secured his transfer to the Metropolitan Correctional Center in New York. Pellerito related that after his transfer to New York, Mr. Bronson came to see him in Mr. Fisher's place. PWH, Docket Document No. 1026, at 12–13.

The testimony of both Fisher and Morales–Sánchez refuted Pellerito's assertion that Fisher and Bronson completely ignored the defendant and the case. Mr. Fisher estimated that he visited the defendant on six to nine occasions and discussed various aspects of the case. *See* PWH, Docket Document No. 1026, at 43–47. Mr. Fisher indicated that he had frequent telephone conversations from Hong Kong with Bronson, wherein they discussed the problems in the case. Mr. Morales–Sánchez testified that he discussed the evidence and the case with Mr. Fisher on four or five occasions and that he had conversations with both Fisher and Bronson concerning the tapes. PWH, Docket Document No. 1026, at 108, 119–20.

Mr. Fisher filed the set of pretrial motions prepared by Pellerito's prior attorney, Mr. Segal, which Fisher and Bronson had found to be both appropriate and competent. PWH, Docket Document No. 1026, at 66–68. As we stated at the plea withdrawal hearing, the court found this set of motions, filed on Pellerito's behalf, to be the best set of motions filed in the instant case, which involved numerous defendants.

We find the claim that the possibility of attacking the tapes was never fully explored is, likewise, not credible, in light of the record and the evidence presented. As the court stated during the plea withdrawal hearing, a conference was held wherein Mr. Fisher and Mr. Bronson discussed with the court the situation of the tapes, the inventories, the logs, etc. *See* PWH, Docket Document No. 1026, at 65. Mr. Fisher filed a motion for continuance, which was granted in part, specifically so that Pellerito's counsel would have an opportunity to review the discovery and the tapes, and adequately prepare for trial. *See* Docket Document No. 688. Fisher testified that he, and Bronson to a greater extent, spent a good deal of time reviewing the tapes and logs. Frequent contact was made with the government attorneys concerning various aspects of the tapes and transcripts. *See* PWH, Docket Document No. 1026, at 52–54, 57. The attorneys did not file a motion attacking the tapes because they determined that they had no legitimate shot and that filing a fruitless motion would serve only to force the government to become more familiar with the tapes and the case. *See* PWH, Docket Document No. 1026, at 71–74. Fisher is an experienced criminal trial attorney, familiar with cases involving electronic surveillance. *See* PWH, Docket Document No. 1026, at 71–74.[5]

Contrary to Pellerito's allegation, we find that attorneys Fisher and Bronson did discuss the substance of the case with defendant. *See* PWH, Docket Document No. 1026, at 50–57. Pellerito alleged that Mr. Bronson spoke only about money during his visits. However, Pellerito also stated that Bronson told him a couple of things as to what Cardozo would testify against him and showed him papers related to an investigation in New York, including an affidavit in support of a wiretap. PWH, Docket Document No. 1026, at 13–21. Mr. Bronson met and discussed the evidence,[6] in-

---

**5.** We note that several other defendants were affected by electronic recording of conversations. No motion was ever placed before the court by any defendant attacking the validity of the tapes.

**6.** At the plea withdrawal hearing, the defense attempted to solicit from defendant whether various documents or other discovery evidence

had been discussed or shown to the defendant by any of his prior counsel. As the court and attorney de Jesus pointed out, such evidence constituted Jencks Act material, and as per our pretrial order in accordance with such Act, would not have been turned over to the defense until after the jury was sworn. *See* PWH, Docket Document No. 1026, at 18–23.

cluding the tapes, with defendant on a number of occasions while Pellerito was in prison in Otisville, New York. The tapes and transcripts were delivered by Bronson to Otisville, but apparently Mr. Pellerito did not have the opportunity to listen to the tapes. Mr. Fisher confirmed that potential defense theories were explored and in that regard, Bronson had a number of meetings with an associate of Mr. Pellerito's, Mr. DiMartino.[7] *See* PWH, Docket Document No. 1026, at 54–56. Mr. Fisher visited with Pellerito once in New York, eight days before trial, to discuss the tapes and the case, and also described to defendant a pending state investigation and the possibility of testifying in New York against a Mr. Pasquale Conti. *See* PWH, Docket Document No. 1026, at 57–60. Mr. Fisher responded that he could not go into further detail as to the discussions with Pellerito or counter any additional aspects of Pellerito's testimony or arguments, without going into privileged areas. *See* August 24, 1988 Hearing, Docket Document No. 1026, at 60, 77. Shortly after that meeting, Mr. Fisher heard from Bronson that their services as Pellerito's attorneys had been terminated.

c) *Representation by Attorney Moore*

Mr. Moore was contacted, on Pellerito's behalf, by Mr. Mario Malerba, another New York-based attorney, who served as the attorney for co-defendant Tabbita. On the Thursday before trial, Mr. Moore drove to visit Pellerito in Otisville, accompanied by Mr. DiMartino and Mr. Malerba, who was briefing Moore as to various aspects of the case. The case, tapes, and defense strategy were discussed with defendant. Attorney Malerba speaks English, Italian, and Sicilian, and Pellerito testified that Malerba was fully involved in the discussion with Moore, because defendant and Malerba would often speak Sicilian. *See* Excerpt of Hearing of August 25, 1988, Docket Document No. 1027, at 9. Mr. Moore stated that he had known Pellerito for approximately six years prior to being hired as an attorney in this case. Pellerito indicated that he needed an attorney for trial and felt abandoned by Fisher and Bronson, whom he believed were only interested in money. Mr. Moore told Pellerito that the evidence against him was quite substantial. Pellerito confirmed that he talked about the case at that meeting and that Moore wanted to know everything. Excerpt of Hearing of August 25, 1988, Docket Document No. 1027, at 7.

During the transition period, Moore was briefed by both Fisher and Bronson and had extensive discussions with Fisher concerning the case. PWH, Docket Document No. 1026, at 62–64, 78, 83–84. Mr. Moore was involved in extensive conversations regarding the case with Malerba, because Moore serves of counsel to Malerba's firm and, therefore, they interlock quite a bit. In this manner, Mr. Moore testified that he had seen some of the discovery materials and was aware of the contents of the tapes, through Mr. Malerba, even prior to the

7. The role of Mr. DiMartino vis-a-vis Mr. Pellerito and the defendant's various attorneys remains unclear. Mr. Fisher's testimony included the following explanation:

Mr. DiMartino was another factor here. Mr. Bronson had numerous meetings with DiMartino exploring the references ... Mr. DiMartino is someone who worked for, from what I could tell, in a legitimate capacity, for Mr. Pellerito.

PWH, Docket Document No. 1026, at 54–56. Mr. Fisher stated that they were attempting to pin down the legitimacy of Mr. DiMartino's relationship with Mr. Pellerito in the exploration of possible defense theories to explain references in the wiretaps that Pellerito was attempting to collect money from co-defendant, Mr. Héctor Martínez. *Id.* Upon the court's inquiry, Mr. Moore stated that he believed that DiMartino was a friend of Pellerito who may work for the defendant in a legitimate business. PWH, Docket Document No. 1026, at 82–84. Mr. DiMartino accompanied Moore and attorney Malerba on Moore's initial visit to Otisville, and participated in the discussion of the tapes and the defense strategy. *Id.* Mr. DiMartino accompanied Mr. Cristini in a visit to our chambers on the first day of trial, June 6, 1988. In August 1988, we denied attorney Cristini's request to U.S. Marshals to permit his "paralegal," DiMartino, to accompany him to visit Pellerito, in custody here in Puerto Rico. *See* Docket Document Nos. 939E and 959. The government asserts that DiMartino is a close associate of Pellerito whose voice appears on numerous Title III intercepts. *See* Docket Document No. 959 at 3. Mr. DiMartino was present for the duration of the plea withdrawal hearing held August 24–26, 1988.

first Otisville meeting with Pellerito. *See* PWH, Docket Document No. 1026, at 84, 91. The full discovery material was delivered to Moore by Bronson on Saturday. Mr. Moore additionally had extensive telephone conversations about the evidence and other facets of the case with attorney Morales. *See* PWH, Docket Document No. 1026, at 86, 109–10.

As Pellerito asserted, Mr. Moore did not specifically commit to represent defendant at the Thursday meeting. PWH, Docket Document No. 1026, at 85–86. However, Pellerito testified that Moore said that "with the help from Malerba, because he knows the case, he is going to work all night, all morning...." PWH, Docket Document No. 1026, at 29. Thereafter, Pellerito's family apparently got in touch with attorney Cristini. On Sunday morning before trial, attorneys Cristini and Rubino, Pellerito's current lawyers, visited the defendant in Otisville, and told defendant that they would not have enough time to prepare his case.[8] PWH, Docket Document No. 1026, at 30; Excerpt of August 25, 1988, Docket Document No. 1027, at 8–9. One hour later, on Sunday, Mr. Moore again visited with Pellerito, in the company of Malerba, and assured defendant that he was ready to represent him for trial. PWH, Docket Document No. 1026, at 30; Excerpt of August 25, 1988, Docket Document No. 1027, at 8–9.

At the plea withdrawal hearing, attorney Moore stated that he had agreed with Pellerito to represent him for a full trial, had every intention of going to trial, and "came ready to go to trial[;] [t]here was no doubt about that." PWH, Docket Document No. 1026, at 86–87. Moore affirmed his prior statements made during the conference room hearing of June 6, 1988, that he was

prepared for trial. PWH, Docket Document No. 1026, at 89–96. Mr. Moore relied on his own extensive criminal law experience and noted that he had the assistance of experienced counsel, Mr. Morales–Sánchez, who knew the case.[9] PWH, Docket Document No. 1026, at 89–94. Mr. Morales–Sánchez characterized the instant case as long and protracted because of the number of defendants, but not as complex in terms of constitutional pronunciations or interlocking strategies of law. PWH, Docket Document No. 1026, at 121. Additionally, Morales–Sánchez stated that he could not rebut Moore's assertion that the time period was adequate for Moore to be prepared. PWH, Docket Document No. 1026, at 110, 121–22. At the time of trial, Moore discussed with Pellerito the fact that he was ready to go to trial, and Pellerito did not express any dissatisfaction as to Moore's legal representation. PWH, Docket Document No. 1026, at 87, 91–92.

Prior to trial, the court granted Mr. Moore's request to permit defendant Pellerito to hear the tapes, because Pellerito had indicated that he had not had an opportunity to listen to the tapes at Otisville. *See* PWH, Docket Document No. 1026, at 90–91. The tapes were played in the presence of Mr. Pellerito and attorneys Moore, Morales–Sánchez, Malerba, and the government attorney, de Jesús.

Approximately one month after trial, Pellerito informed Moore that he wanted to withdraw his plea of guilty. PWH, Docket Document No. 1026, at 87–89.

### d) *The Plea Agreement*

Mr. Moore and Mr. Morales–Sánchez indicated that the issue of pleas arose after the commencement of trial. *See* PWH, Docket Document No. 1026, at 87, 123–24. As detailed above, the plea agreement pro-

---

8. Nevertheless, attorney Cristini, accompanied by DiMartino, was present during the first day of trial, June 6, 1988. *See* PWH, Docket Document No. 1026, at 156–157. According to Pellerito's testimony, Cristini was sent by the defendant's family to see what was going on in Puerto Rico. *See* Excerpt of Hearing, August 25, 1988, Docket Document No. 1027, at 17–18.

9. Mr. Moore previously held the positions of Assistant District Attorney and Assistant United States Attorney and has tried numerous criminal and complex cases. *See* Conference Room Hearing of June 6, 1988, Docket Document No. 1025, at 6–7; PWH, Docket Document No. 1026, at 80–81, 93–94. Among other positions, Mr. Morales–Sánchez served as the United States Attorney for the District of Puerto Rico for ten years and has done criminal defense work. PWH, Docket Document No. 1026, at 104–05, 117.

posed a recommendation of eighteen years, where the potential exposure was twenty years, plus a maximum fine up to $250,000. Both Moore and Morales–Sánchez agreed with defense counsel that whether Pellerito received eighteen or twenty years, his release would be on virtually the same date. However, Mr. Moore and Mr. Morales–Sánchez explained that there was another crucial element which induced the plea agreement. Upon the commencement of trial, the government came up with additional information concerning one of their witnesses, Iván Claudio, who had "broadened his memorial capacity" in relation to alleged meetings involving that witness, Pellerito, and co-defendant Martínez. *See* PWH, Docket Document No. 1026, at 96–102, 110–11, 123–30, 189–90. The government had procured hotel records to corroborate the witness' testimony. The proffered evidence concerned events, or overt acts, occurring after October, 1986, and therefore bringing the conspiracy within the stiffer penalties of the Drug Abuse Act of 1986, 21 U.S.C. § 960 (Supp.1988). Accordingly, Pellerito's exposure for sentencing purposes under the new law would be for a term of imprisonment of not less than ten years or more than life, plus a maximum $4 Million fine. Mr. Moore stated that he spoke with both Mr. Gil and Mr. de Jesús, who indicated that the government would recommend a life sentence. PWH, Docket Document No. 1026, at 97–102. Mr. Morales–Sánchez spoke with three persons who had close relations with Claudio, and determined that the proffered testimony would be harmful to Pellerito and that an attack upon the witness' credibility would not prove fruitful.[10] *See* PWH, Docket Document No. 1026, at 129–30.

Mr. Moore and Mr. Morales–Sánchez fully explained this situation to Pellerito, discussed the tapes which had been played to defendant, and advised him as to the potential plea agreement. PWH, Docket Document No. 1026, at 97–100, 110–11, 114–15. Mr. Moore noted that he had consulted with attorneys Fisher, Bronson, Morales–Sánchez, and Malerba, who all agreed that

the tapes were very damaging. PWH, Docket Document No. 1026, at 100. Mr. Fisher had concurred that the case could not be won and testified that he had become aware that trial would not be profitable. *See* PWH, Docket Document No. 1026, at 63, 78, 84–85. Mr. Fisher indicated that he had specifically discussed with Moore the situation of the pending investigation in New York, and the potential effects that a plea in this case might work to frustrate a prosecution in that jurisdiction. *See* PWH, Docket Document No. 1026, at 63–64. Thus, Mr. Moore was aware that Pellerito potentially could be indicted in other jurisdictions. Mr. Morales–Sánchez testified that the whole terms of the plea agreement, including that it does not bind other jurisdictions or local authorities, were fully explained to Pellerito. PWH, Docket Document No. 1026, at 114–15. Mr. Morales–Sánchez stated that he and Mr. Moore spent two to three hours with Pellerito, discussing the possibility of pleading guilty and Morales believed that Pellerito fully understood the terms of the plea agreement. *See* PWH, Docket Document No. 1026, at 115–17, 124–25.

### The Legal Standards

█ Under Rule 32(d) of the Federal Rules of Criminal Procedure, where a defendant moves to withdraw a guilty plea before sentencing, "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d) (1988). *See U.S. v. Ramos*, 810 F.2d 308, 311 (1st Cir.1987) (noting that Rule 32(d) codified the "fair and just reason" standard of *Kercheval v. U.S.*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)). The burden is on defendant in the present case to show a "fair and just reason" to withdraw his guilty plea. *See* Fed. R.Crim.P. 32(d), Judiciary Committee Notes on 1983 Amendment (1988); *U.S. v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987); *U.S. v. Benavides*, 793 F.2d 612, 616 (5th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986).

---

10. Attorney Morales–Sánchez stated that he could not go into more detail on this issue

because it might do harm to Pellerito if he were to go to trial in the future.

■ It is clear that a defendant has no absolute right to withdraw a guilty plea. *U.S. v. Buckley*, 847 F.2d 991, 998 (1st Cir.1988); *U.S. v. Ramos*, 810 F.2d at 311. As the district court noted in the *Ramos* case, "[t]o recognize such a right 'would reduce the significance of a Rule 11 proceeding to a time-consuming exercise, automatically reversible before sentence at the option of a defendant.'" *U.S. v. Acevedo-Ramos*, 619 F.Supp. 570, 575 (D.P.R.1985) (*quoting Núñez-Cordero v. U.S.*, 533 F.2d 723, 726–27 (1st Cir.1976), *aff'd., U.S. v. Ramos*, 810 F.2d 308 (1st Cir.1987) (cited above); *see U.S. v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983) (same). In other words, where courts "are bending over backwards to make sure that a defendant is aware of what he is doing when he enters a guilty plea, they will not allow that defendant to make a mockery of the system by allowing him to withdraw his plea simply because he changes his mind and now wants a jury trial." *U.S. v. Ramos*, 810 F.2d at 312–13 (*quoting*, Note, "Withdrawal of Guilty Pleas in the Federal Courts Prior to Sentencing," 27 Baylor L.Rev. 793, 799 (1975)).

Several factors have been considered by the court in our determination that no fair and just reason exists to permit the withdrawal of defendant Pellerito's guilty plea. Pellerito's claims theoretically hinge upon the voluntariness of his guilty plea and concurrent waiver.

■ Irrespective of defense counsel Rubino's purported waiver, we specifically reiterate our finding that the degree of Pellerito's facility with the English language did not affect the validity of his plea, nor preclude him from fully understanding the consequences of his actions. At court proceedings, Pellerito was at all times offered the assistance of a court intrpreter. We also note that Attorney Malerba, who speaks Italian and Sicilian, was often present and assisted the defendant and his attorneys in their discussions of Pellerito's defense, at the time period of the change of plea, and thereafter. Attorney Morales-Sánchez also testified that he sometimes communicated with defendant in Italian.

Ineffective assistance of counsel is asserted as a ground for withdrawal of defendant Pellerito's guilty plea. "Although it is possible for inadequate assistance by an attorney to render a guilty plea involuntary and thus a nullity, such ineffective representation was not afforded to [Pellerito]." *U.S. v. Panzardi–Alvarez*, 678 F.Supp. 353, 364 (D.P.R.1988) (determination in context of a 28 U.S.C. § 2255 petition). The standard for evaluating a claim of ineffective assistance of counsel in the context of a Rule 32(d) presentence challenge to a guilty plea is the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *U.S. v. Ramos*, 810 F.2d at 314; *see Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Defendant must demonstrate first, that "counsel's representation fell below an objective standard of reasonableness," *Hill v. Lockhart*, 474 U.S. at 57, 106 S.Ct. at 369 (*quoting, Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65), and second, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*, 474 U.S. at 59, 106 S.Ct. at 370. *See U.S. v. Ramos*, 810 F.2d at 314; *U.S. v. Panzardi–Alvarez*, 678 F.Supp. at 364. Defendant has failed to persuade us as to either prong.

■ We discuss first, the claims of ineffective assistance by Fisher, which include alleged abandonment of defendant and the case, and unreasonable defense strategy regarding the tapes. Contrary to Pellerito's assertion, the evidence indicates that the team of Fisher and Bronson did not ignore defendant and the case. In light of all the circumstances, we cannot say that Fisher's representation demonstrates conduct "outside the wide range of professionally competent assistance ... [given that] counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690, 104 S.Ct. at 2066. Attorneys Fisher, Bronson, and Morales–Sánchez met with defendant to discuss the case and proceeded to devel-

op his defense as required. Bronson visited Pellerito at Otisville, New York to discuss aspects of the case and continued with the preparation of the defense. Pellerito's claims that Bronson was not his attorney and that Bronson visited him only to discuss money are contradicted by both Fisher's and Pellerito's own testimony. We also find that the available discovery material and defense theories were discussed with defendant. Pellerito's testimony and allegations to the contrary are not credible to the extent claimed.

During the plea withdrawal hearing, extensive inquiry was made to prior counsel, Fisher, Moore, and Morales–Sánchez, concerning defense investigation and strategy regarding the tapes obtained by wiretap or electronic surveillance. All of Pellerito's prior attorneys are in agreement that the tapes constitute extremely damaging evidence against the defendant. The court questioned present counsel, Rubino, as to what was wrong with the tapes. Attorney Rubino asserted his experience in the field of Title III intercepts and argued that there may be plenty wrong, such as with the probable cause to acquire the recordings, with the minimization, the physical installation, or the chain of custody. PWH, Docket Document No. 1026, at 177–79. In other words, the defense claim of ineffective assistance of counsel envelopes the argument that none of Pellerito's prior attorneys reviewed the wiretaps in the "depth and detail" to which the defendant is entitled. *See Id.*

Pellerito asks the court to consider whether counsel exercised reasonable professional judgment in the investigation and defense strategy regarding the tapes. The relevant standard is set forth in *Strickland* as follows:

> [S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation.

*U.S. v. Strickland,* 466 U.S. at 690–691, 104 S.Ct. at 2066. Fully competent pretrial motions were filed on Pellerito's behalf and a continuance was requested by Fisher in order to better review the tapes and prepare for trial. In light of the motion for continuance filed by Fisher, and the testimony at the plea withdrawal hearing as to Fisher and Bronson's investigation of the wiretap evidence, we find that Pellerito's allegation that his counsel failed to adequately investigate the possibility of attacking the tapes is without legal merit. No motion attempting to knock out the tapes was filed because no legitimate basis for attack was found and also for strategic reasons to avoid the government becoming more familiar with its evidence through the process of defending a fruitless motion. We note once again that of the numerous highly qualified attorneys representing the many other defendants in this case, none filed any motion attacking the tapes. Defense counsel's actions regarding the tapes constituted reasonably competent strategic choices and fall within the standard enunciated in *Strickland.* Accordingly, we cannot say that the pretrial representation provided by attorneys Fisher, Bronson and Morales–Sánchez fell below an objective standard of reasonableness. Likewise, the record does not reveal the required nexus between the pretrial conduct of these attorneys, and Pellerito's later change of plea decision.

■ We turn now to Pellerito's claims of ineffective assistance by attorney Moore, which include Moore's alleged lack of preparation and the effect of such on the voluntariness of defendant's change of plea, as well as the general assertion of involuntariness of the plea due to lack of free will and defendant's reliance upon erroneous advice of Moore. Pellerito's allegation that attorney Moore was unprepared to represent defendant and to proceed through a full jury trial is not supported by the evidence. We do not doubt that both Moore himself, and defendant Pellerito would have preferred that Moore have more preparation time. However, the record does not support a finding either that the trial team captained by attorney Moore was un-

prepared or that Pellerito's change of plea was rendered involuntary due to his dissatisfaction with his legal representation at the time of trial.

Although the amount of preparation time might be so short as to imply ineffective assistance in a particular situation, such is not the case here. Attorney Moore first met with the defendant four days before trial. Moore testified that he was previously aware of the contents of the tapes and some of the other discovery materials through attorney Malerba. Moore has an extensive background in the practice of criminal law and was assisted by a number of other experienced attorneys, who were familiar with the case. Moore was assisted in his preparation of the case through extensive discussions with Malerba and cocounsel Morales–Sánchez, who had been involved in the case for quite some time. Attorneys Morales–Sánchez and Malerba continued to assist Moore through the change of plea. Moore was also briefed by prior counsel, Fisher and Bronson. Furthermore, he had the benefit of discussions with Pellerito and with defendant's associate, DiMartino.

We agree with attorney Morales–Sánchez' characterization that the defense case as to Mr. Pellerito would not be deemed "complex" by experienced criminal counsel such as Moore and Morales–Sánchez. The government argued that although there was a large amount of discovery material in the instant case, the bulk of such evidence constituted financial documents not related to the charge against Pellerito, but pertaining to the continuing criminal enterprise count against co-defendant, Héctor Rivera–Martínez. PWH, Docket Document No. 1026, at 184–86.

In light of the testimony heard during the pretrial conference and Rule 11 hearings, and the evidence presented during the plea withdrawal hearing, we remain unconvinced that Moore's alleged unpreparedness constituted ineffective assistance of counsel. We cannot say that Moore's representation fell below *Strickland's* objective standard of reasonableness either by accepting the task as Pellerito's attorney under the circumstances, or after examination of the actual assistance provided to defendant by trial counsel.

■ Pellerito's related claim that Moore's alleged lack of preparation affected the voluntariness of defendant's change of plea is not persuasive. On June 6, 1988, prior to the commencement of trial, and prior to any significant plea negotiations, Pellerito was brought before the court for the express purpose of determining whether he was satisfied with the status of his legal representation. Pellerito specifically stated that he was satisfied and had no problem with being represented by attorneys Moore and Morales–Sánchez. During the change of plea colloquy on June 7, 1988, the defendant again responded affirmatively to our direct questions as to whether he was satisfied with the legal representation of Moore and Morales–Sánchez. Pellerito was given two opportunities during the crucial time period to voice any concern or dissatisfaction he might have had at the time. Pellerito's contemporaneous statements made on two separate occasions prior to his change of plea, detract from the credibility of his current allegations that the voluntariness of his change of plea was somehow affected by the alleged ineffective assistance or unpreparedness of his counsel.

■ Pellerito's claims that he plead guilty against his will and solely in reliance upon Moore's advice, are not credible in view of the record. A critical consideration is whether the defendant voluntarily and intelligently entered into a guilty plea with full understanding of his rights and the consequences of his plea within the meaning of Rule 11. *U.S. v. Ramos,* 810 F.2d at 312; *see U.S. v. Kobrosky,* 711 F.2d at 455. In the instant case, it is clear from our own recollection and the transcript of the change of plea hearing, that the court assiduously complied with the requirements of Rule 11. *See U.S. v. Ramos,* 810 F.2d at 312, *aff'g, U.S. v. Acevedo–Ramos,* 619 F.Supp. at 575. In the course of the Rule 11 hearing, Pellerito also agreed that he had been afforded ample opportunity to discuss all aspects of the case with attor-

neys Moore and Morales–Sánchez to his satisfaction. The court inquired as to the voluntariness of the plea; requested statements by the defendant, defense counsel and government attorneys, and made our own observations and determination as to Pellerito's competence. We fully advised Pellerito of all the rights and privileges of a trial by jury and informed him that his attorneys could confront and cross-examine government witnesses and object to the tapes. Pellerito affirmed that he wanted to waive each of these rights. As set forth above, Pellerito denied that he had been forced or induced to change his plea and agreed that he was pleading guilty out of his own free will. The court specifically detailed the indictment and potential penalties, and questioned Pellerito as to his understanding and acknowledgement that he committed the offense as charged. Both Pellerito and his counsel affirmed that the government's rendition correctly reflected the plea agreement. We elicited a proffer by the government and considered comments by the defendant and counsel; and determined that a factual basis exists for Pellerito's plea and that defendant fully understood the consequences of the change of plea. The transcript illustrates that the court made every effort to insure that defendant knew what he was doing when he changed his plea to guilty.

■ Defendant further claims that his plea and waiver were not voluntarily and knowingly executed due to alleged misrepresentations or erroneous facts presented to him by his trial attorneys regarding his change of plea and the plea agreement. In other words, Pellerito asserts that his plea was rendered involuntary due to alleged acts or omissions of his trial attorneys which constituted ineffective assistance of counsel.

Any claim by Pellerito that trial counsel's advice to plead guilty constitutes ineffective assistance in the instant case, is without merit.

The long standing test for determining the validity of a guilty plea is whether the plea represents a voluntary and intel-

ligent choice among the alternative courses of action open to the defendant. *Hill v. Lockhart,* 474 U.S. at 56, 106 S.Ct. at 369 (citations omitted). The testimony of attorneys Moore and Morales–Sánchez illustrated the reasons behind the advice to plead guilty, which centered upon the proffered testimony of government witness Iván Claudio. The new evidence would expose Pellerito to a potential life sentence. The transcripts of the Rule 11 and plea withdrawal hearings indicate that all of the attorneys involved in Pellerito's defense concurred that the evidence was strong and that defendant had virtually no chance of success if the case proceeded through trial. Counsel advised defendant to accept the plea agreement which included a recommended sentence of eighteen years and a maximum exposure of twenty years. Such advice was clearly within the range of competence demanded of attorneys in criminal cases. *Id.* Furthermore, Pellerito's plea satisfies the test that it represents a voluntary and intelligent choice among the available alternatives. *Id.* "We cannot characterize [Pellerito's] decision to plead guilty rather than chance a life sentence after trial as at all unreasonable." *U.S. v. Panzardi–Alvarez,* 678 F.Supp. at 365.

■ Pellerito asserts that he was given erroneous advice as to the extent of the plea agreement, which constitutes a separate claim of defective assistance. Defendant's claim that attorney Moore actually advised him that the guilty plea would preclude his indictment in other jurisdictions is not credible. Morales–Sánchez testified that the fact that the plea agreement was not binding on other jurisdictions was explained to Pellerito. PWH, Docket Document No. 1026, at 115. As the government argued, experienced criminal attorneys such as Moore and Morales–Sánchez, who both previously served with the U.S. Attorney's office, would be fully aware that the prosecutors in this case would not be empowered to bind other jurisdictions. *See* PWH, Docket Document No. 1026, at 191–192. Although neither attorney Moore nor Morales–Sánchez was specifically questioned at the plea withdrawal hearing as to whether they personally *told* defendant

such erroneous information, it may be clearly inferred from their testimony, as set forth above, that they did not so advise defendant. This inference is supported by reference to the attorneys' responses made during the Rule 11 hearing, when the court inquired as to the extent of the plea agreement. Moore and Morales–Sánchez both assured the court that the government's rendition of the plea agreement constituted the "only extent of the agreement." COP, Docket Document No. 944, at 20–21. Thus, Pellerito has failed to identify any acts or omissions of trial counsel that were outside the wide range of professionally competent assistance.

Pellerito has failed to overcome the "reasonably effective assistance" standard which requires that "a defendant must allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not a knowing and intelligent act." *U.S. v. Acevedo–Ramos*, 619 F.Supp. at 576–77. In light of all the circumstances, the record does not support a conclusion that Pellerito's legal representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by Pellerito's attorneys, defendant would have gone to trial. *See Hill v. Lockhart*, 474 U.S. at 57–59, 106 S.Ct. at 369–70. Accordingly, we find that Pellerito's claims of ineffective assistance of counsel do not illustrate any fair and just reason to provide a basis for withdrawal of his guilty plea.

■ We proceed to review Pellerito's further argument which rests not upon any alleged errors of counsel, but strictly upon alleged involuntariness of his change of plea. The more refined argument asserted by Pellerito is that he *misunderstood* the consequences of the plea agreement in that he subjectively believed that the guilty plea would preclude his prosecution in other jurisdictions. Defendant claims that he did not voluntarily enter into the plea and waiver with full understanding of the consequences. Although slightly more plausible, this claim is, likewise, not credible in light of the change of plea colloquy and the testimony of Moore and Morales–Sánchez,

heard at the plea withdrawal hearing. As emphasized above, our compliance with the Rule 11 procedures weighs heavily against defendant. *See U.S. v. Ramos*, 810 F.2d at 312; *U.S. v. Kobrosky*, 711 F.2d at 455.

Pellerito's references to Puerto Rico, New York, New Jersey, and Florida during the Rule 11 hearing, arguably support his present allegation that he incorrectly believed that a guilty plea in this case would absolve him from future criminal liability in those jurisdictions. Nevertheless, we find such inference to be refuted by the other evidence of record. The testimony of Morales–Sánchez revealed that the attorneys spent two to three hours discussing with Pellerito the plea agreement and his decision to plead guilty. If immunity from prosecution was such a motivating factor in Pellerito's decision to plead guilty, it strains credibility to suggest that his misconception as to the grant of immunity would not have come to light in the lengthy discussions with his attorneys concerning his change of plea. Pellerito's responses at the Rule 11 hearing further contradict his allegation that he misunderstood the consequences of his plea. After the government set forth the simple plea agreement which made no reference to a grant of immunity, Pellerito agreed that those were the terms that he had negotiated. The defendant also stated that "no promises" of any kind had been made to him to induce him to plead guilty. COP, Docket Document No. 944, at 21–23. Accordingly, we find Pellerito's claim that he misunderstood the consequences or extent of the plea agreement to be unpersuasive.

In making our determination that Pellerito has not presented a fair and just reason to withdraw his guilty plea, we have considered factors apart from the alleged ineffective assistance, and the critical concerns of compliance with Rule 11 and general voluntariness. Another factor for consideration is whether the defendant asserted his legal innocence at the time of the guilty plea. *U.S. v. Ramos*, 810 F.2d at 312. The instant case does not involve a situation where a defendant has made a tactical guilty plea and continues to assert his innocence. *Id.; U.S. v. Kobrosky*, 711 F.2d at

455; *see North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). The defense has made reference to potential legal challenges to the tapes or wiretaps, but has not thereby directed us to the existence of any exculpatory evidence. We found that Pellerito's pretrial counsel team of Fisher, Bronson, and Morales–Sánchez had ample time and exercised reasonably competent assistance in the defense strategy regarding this evidence. In any event, the current defense counsel was not able to particularize any specific problem with the tapes, illumination of which might suggest a fair and just reason to withdraw the plea in order to permit the challenge.

The time interval between the guilty plea and the filing of the motion to withdraw is also an element to be considered. A prompt withdrawal or a "swift change of heart" may indicate that the plea was entered in haste or confusion. *U.S. v. Benavides,* 793 F.2d at 617–18; *see U.S. v. Triplett,* 828 F.2d at 1197; *U.S. v. Ramos,* 810 F.2d at 312. A relatively lengthy delay mitigates against a finding of confusion. *See U.S. v. Ramos,* 810 F.2d at 312–13 (thirteen-day delay does not indicate swift change of heart) (see cases cited therein); *U.S. v. Kobrosky,* 711 F.2d at 456 (three-week interval indicates defendant neither confused nor unfairly pressured). Approximately eight weeks passed before the motion to withdraw was filed on Pellerito's behalf. Attorney Moore's testimony indicated that Pellerito first expressed a desire to withdraw his plea approximately one month after the guilty plea. Pellerito's own testimony suggests a shorter interval, but is somewhat contradictory. In the instant case, a finding of confusion or unfair pressure cannot be inferred from the time interval between the guilty plea and Pellerito's unsupported allegations that he immediately desired to withdraw his plea when his counsel failed to provide him with a document evidencing a grant of immunity in other jurisdictions.

The court may also consider any prejudice to the government which could result from a plea withdrawal. *U.S. v. Kobrosky,* 711 F.2d at 455. The government has asserted that it would suffer certain prejudice if required to reassemble its evidence and witnesses at this time. In any event, where a defendant has failed to advance a "fair and just" reason to withdraw his plea, as in the instant case, an analysis of potential prejudice is unnecessary. *See U.S. v. Ramos,* 810 F.2d at 313, 315; *U.S. v. Benavides,* 793 F.2d at 617.

### Conclusion

Accordingly, we find that defendant Pellerito voluntarily plead guilty after trial had commenced and waived his right to a further jury trial on June 7, 1988, with a full understanding of his rights and the consequences of the plea, and that Pellerito was competent to execute such plea. We also find that Pellerito's claims of ineffective assistance of counsel are without merit. Defendant has failed to meet his burden of demonstrating a "fair and just" reason to withdraw his plea of guilty entered in this case.

The motion to withdraw the guilty plea of defendant Giuseppe Pellerito is hereby DENIED.

IT IS SO ORDERED.