**UNITED STATES of America, Plaintiff,**

v.

**Hector RIVERA MARTINEZ, Defendant.**

**Crim. No. 87–685 (JAF).**

United States District Court,
D. Puerto Rico.

Sept. 2, 1988.

Everett M. de Jesús, Guillermo Gil, Trial Attys., U.S. Dept. of Justice, Charles E. Fitzwilliam, Executive Asst. U.S. Atty., San Juan, P.R., for plaintiff.

María Sandoval, San Juan, P.R., for defendant.

## EXPANDED OPINION AND ORDER

FUSTE, District Judge.

Defendant Héctor Rivera–Martinez ("Rivera"), also known as "El Men", was indicted as to a continuing criminal enterprise involving narcotics trafficking, conspiracy to possess with intent to distribute cocaine and heroin, and aiding and abetting in distributions of heroin. 21 U.S.C. §§ 841(a)(1), 846, 848, 853, and 18 U.S.C. § 2. The indictment further alleged that as a result of such continuing criminal enterprise, Rivera obtained substantial profit and properties subject to forfeiture to the United States. During the third day of trial, on June 8, 1988,[1] the court was informed that Rivera wanted to change his plea to guilty as to Counts I to IV, inclusive.[2] Thereafter, the court held a change

1. Defendant Rivera requested to change his plea to guilty on the third day of trial, which was June 8, 1988. The Cimarron computer draft transcript of the change of plea hearing states that such hearing was held on June 7, 1988, (Docket Document No. 909A), when in fact the minutes correctly reflect that the hearing was held during the afternoon of June 8, 1988. (Docket Document No. 817). Accordingly, during the plea withdrawal hearing held on August 18, 1988, references were incorrectly made at times, to the date of June 7, 1988. The court reporter has proofread and corrected the draft, and the ribbon transcript of the change of plea has been filed. Docket Document Nos. 935 and 943.

2. Counts V through VII, dismissed upon the government's request, involved aiding and abetting in the failure to file IRS Form 4789 relating to transfers of currency in excess of $10,000. 31 U.S.C. §§ 5313 and 5322(b), and 18 U.S.C. § 2.

of plea hearing in accordance with Fed.R. Crim.P. 11. Seven weeks later and prior to sentencing, scheduled for August 25, 1988, Rivera filed a pro-se motion seeking to withdraw the guilty plea and to dismiss his legal counsel, attorney Carlos Noriega. *See* Docket Document No. 897. The court appointed attorney María Sandoval to represent the defendant for the purpose of his motion, and a hearing was held on August 18, 1988. Based on consideration of the record and the evidence presented at the hearing, and for the reasons set forth by the court at the conclusion of the hearing, Rivera's motion was denied. We now expand on the reasons behind our bench ruling. We will first discuss the motion to withdraw guilty plea, including the grounds raised by the motion itself and during the course of the plea withdrawal hearing held August 18, 1988. We will next set forth what transpired on the third day of trial, June 8, 1988, when the change of plea was accepted by the court. We will also review the August 18, 1988 plea withdrawal hearing, the legal standards applicable to defendant's request in light of the evidence received and, lastly, our conclusion that defendant is bound by his plea of guilty in this case.

### Motion to Withdraw Guilty Plea

In Rivera's motion, he alleges that his guilty plea was invalid due to ineffective assistance of counsel by attorney Noriega as follows: that at no time did Noriega sit down with Rivera to gather information to prepare a defense, that Noriega failed to obtain allegedly exculpatory evidence from Rivera's accountant as instructed by Rivera, that Noriega erroneously led Rivera to believe that a defense had been developed, and that, prior to trial, Noriega refused to resign as counsel upon Rivera's request.

Defendant's eventual testimony at the subsequent plea withdrawal hearing raised additional grounds for the motion. At the motion hearing on August 18, 1988, Rivera asserted that he had not understood the

consequences of the change of plea, and that his plea was involuntary due to his mental state on the date of his guilty plea, June 8, 1988. Rivera claimed that he was under the influence of various prescription drugs, and that he only plead guilty because he was demoralized and overcome with anxiety and guilt as to the effect that a continuation of the trial would have on his family. In particular, Rivera testified as to an alleged telephone conversation during the trial lunch break on June 8, 1988, wherein his hospitalized mother, now a sentenced codefendant in the instant case, begged him to plead guilty and save himself and the family from further anguish. Defendant's testimony at the withdrawal hearing also arguably raised the issue that when he executed his guilty plea, he believed that such plea was made pursuant to previously discussed plea agreements which never materialized.

### Change of Plea Hearing

At the change of plea hearing held on June 8, 1988, we set forth the purposes of the Rule 11 hearing to defendant.[3] Thereafter, the following colloquy occurred:

THE COURT: I see. Have you taken any drugs, medications, pills or alcoholic beverage in the past 24 hours of the type that may impair your ability to understand what is happening here today?

THE DEFENDANT: No.

THE COURT: Do you understand what is happening today?

THE DEFENDANT: Yes.

THE COURT: What are you here for?

THE DEFENDANT: I am being accused of these crimes.

THE COURT: What is the purpose of you now standing before me? What is it that you want to do?

THE DEFENDANT: I would like to plead guilty to the crimes and I don't want to go on with this because it is too strong. My family has suffered too much.

---

**3.** Rivera was sworn to testify under oath and subject to the penalties of perjury. The defendant voiced no objection to this procedure.

THE COURT: Do you feel competent to plead at this time?

THE DEFENDANT: Yes, sir.

THE COURT: Let me ask you this, Mr. Noriega. Do you believe your client is competent to plead at this time?

MR. NORIEGA: Yes, sir.

THE COURT: Are you sure?

MR. NORIEGA: I am sure, sir.

THE COURT: All right.

Mr. Gil, Mr. Jesus [4], what is your view on this?

MR. JESUS: Your Honor, both Mr. Gil and myself has [sic] spoken to the defendant, just recently, and I have no doubt as to his competency to enter a plea.

THE COURT: Okay. I should state for the record that I have been presiding over this trial since Monday, and I have been watching Mr. Rivera–Martínez, and in my own view, he is competent to make any decision regarding the case and I so find at this time.

Have you had ample opportunity to discuss this case with your attorney; who is a first class lawyer?

THE DEFENDANT: Yes, yes, sir.

THE COURT: And let me ask you this: Are you satisfied with the work he has done for you?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed with him this decision that you have made of pleading guilty to the four counts?

THE DEFENDANT: Yes, sir.

THE COURT: Has he advised you about this?

THE DEFENDANT: I was the one who asked him to plead guilty.

THE COURT: In other words, it is your decision.

THE WITNESS: Yes, sir.

*See* Change of Plea of Héctor Rivera–Martínez, Docket Document No. 943 (hereinafter referred to as "COP"), at pp. 4–6.

The court fully explained to Rivera the rights involved in a trial by jury and when

defendant was asked if he wanted to waive those rights, he stated "I prefer it". COP at pp. 6–10. The indictment was thoroughly reviewed as to each count, legal terms and applicable statutes were defined, and the consequences and potential penalties were detailed. COP at pp. 10–44. Rivera interrupted the discussion on various occasions to ask questions and to make explanations to the court. *See e.g.*, COP at p. 11, line 13; p. 14, lines 18–24; 23–24; p. 15, lines 18–25; p. 16, lines 1–3; p. 21, lines 4–5; p. 23, lines 7–8; p. 26, lines 22–23; p. 27, lines 24–25; pp. 33–34. The defendant repeatedly affirmed his understanding of each of the charges and penalties and admitted that he committed the offenses as described by the court. COP at pp. 10–44. The court then stated that the instant case involved a straight plea with no plea agreement. COP at p. 43. Defendant responded negatively to the questions of whether anyone had made any prophecy or promises regarding his sentence. COP at pp. 43–44. Upon completion of the Government's proffer of evidence, Rivera responded as follows: "The only thing, your Honor, that in 1976 I was in a drug program. I came her [sic] to Puerto Rico and moved to Puerto Rico in 1975. That is all I can say. Everything else is true." COP at p. 47.

Upon inquiry by the court on June 8, 1988, defense attorney Noriega stated that he had made over twenty visits to defendant to discuss the case at length and had put in more than two-hundred hours examining the evidence, which he was convinced was overwhelming. COP at pp. 48–49. The defendant agreed and reference was made to the fact that defendant had desired to plead guilty from the beginning, but that there had been disputes as to the plea conditions. COP at pp. 49–50. Defendant affirmed that all he had wanted was for his wife to be able to stay with his children and that they have a place to live. COP at pp. 49–50. The court then accepted Rivera's plea, after specifically finding that Rivera was voluntarily pleading with full

---

**4.** Messrs. Guillermo Gil and Everett M. de Jesús are the trial attorneys for the Department of

Justice in this case.

understanding of what he was doing and of his rights and the potential punishments. COP at pp. 50–51. At all times the change of plea was governed by an understanding between court and defendant about the fact that if the plea was accepted, defendant would not be allowed to recant and withdraw his plea.

### Plea Withdrawal Hearing

In the course of the plea withdrawal hearing, Rivera waived his attorney-client privilege with respect to Noriega. Attorney Noriega testified at length concerning his criminal law experience, his numerous pretrial meetings with Rivera and extensive case preparation, and the circumstances as to potential plea bargaining and Rivera's change of plea. Noriega specifically addressed and refuted each of defendant's allegations. In the course of discovery, Noriega determined that the accountant to whom Rivera had referred, was in fact a government witness and all of the accountant's records related to defendant had been seized by the government. Noriega confirmed that the government showed him accounting records and evidence related to Rivera's acquisition of the properties at issue, as well as evidence that Rivera's lottery prizes were not the result of chance winnings. Additionally, Noriega had listened to the complete set of tape recordings, and played tapes containing the most egregious evidence to defendant. The defendant was not misled by Noriega concerning the evidence or his defense. Rivera told his attorney that he wanted to plead guilty if the government would make certain concessions regarding his family and properties. The government refused to make such concessions and no plea agreement was ever reached.

The hearing revealed that defendant and counsel Noriega had some disagreements during the course of the representation. On or about April 27, 1988, upon Rivera's request, Noriega delivered all the files to defendant and signed a proposed resigna-

tion. However, Noriega remained as counsel due to the fact that defendant told him not to file the resignation document because he did not want to be left without a lawyer.

Noriega testified that on the afternoon of June 8, 1988, Noriega was informed that Rivera wanted to stop and plead guilty. Although Noriega advised Rivera that this was a straight plea, the defendant insisted. At the hearing of August 18, 1988, Noriega reconfirmed his view as to defendant's competency in pleading guilty.

Regarding the effect of prescribed medication on defendant's mental state at his change of plea, Rivera testified that he had lied at the Rule 11 hearing when he responded that he was not under the influence of any medication that would impair his ability to understand those earlier proceedings. Testimony was heard by Dr. Jorge Prieto, who has been treating defendant Rivera in the prison where he has been detained in connection with this case. Dr. Prieto described the various medications which had been prescribed for Rivera on or about the dates of trial in early June.[5] The purposes of these medications were the treatment of arterial hypertension, insomnia, muscle spasms, and relief from anxiety or an anxiety disorder. Dr. Prieto stated that defendant Rivera's consumption of the prescribed dosages on the days of trial would not do any harm to defendant's alertness or awareness, particularly due to Rivera's high tolerance level as a result of his long-term drug addiction.

Lastly, the government argued that it would suffer prejudice by the withdrawal of defendant's guilty plea for various reasons, including that certain items of evidence, such as the heroin, have been destroyed, numerous documents have been returned to financial institutions or destroyed, and a number of witnesses are outside of Puerto Rico and would have to be returned to the island.

---

**5.** Defendant's packet of medications was admitted in evidence at the plea withdrawal hearing and was examined by Dr. Prieto. Furthermore, Dr. Prieto testified that he visited Rivera at the U.S. Marshal facilities located in the Old San Juan Courthouse on or about the date that defendant pled guilty. Dr. Prieto observed no indication of lack of competency.

### The Legal Standards

Under Rule 32(d) of the Federal Rules of Criminal Procedure, where a defendant moves to withdraw a guilty plea before sentencing, "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d) (1988). *See U.S. v. Ramos*, 810 F.2d 308, 311 (1st Cir.1987) (noting that Rule 32(d) codified the "fair and just reason" standard of *Kercheval v. U.S.*, 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927)). The burden is on defendant in the present case to show a "fair and just reason" to withdraw his guilty plea. *See* Fed.R.Crim.P. 32(d), Judiciary Committee Notes on 1983 Amendment (1988); *U.S. v. Triplett*, 828 F.2d 1195, 1197 (6th Cir.1987); *U.S. v. Benavides*, 793 F.2d 612, 616 (5th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986).

It is clear that a defendant has no absolute right to withdraw a guilty plea. *U.S. v. Buckley*, 847 F.2d 991, 998 (1st Cir.1988); *U.S. v. Ramos*, 810 F.2d at 311. As the district court noted in the *Ramos* case, "[t]o recognize such a right 'would reduce the significance of a Rule 11 proceeding to a time-consuming exercise, automatically reversible before sentence at the option of a defendant.'" *U.S. v. Acevedo–Ramos*, 619 F.Supp. 570, 575 (D.P.R.1985) (quoting *Núñez–Cordero v. U.S.*, 533 F.2d 723, 726–27 (1st Cir.1976)), *aff'd.*, *U.S. v. Ramos*, 810 F.2d 308 (1st Cir.1987) (cited above); *see U.S. v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983) (same). In other words, where courts "are bending over backwards to make sure that a defendant is aware of what he is doing when he enters a guilty plea, they will not allow that defendant to make a mockery of the system by allowing him to withdraw his plea simply because he changes his mind and now wants a jury trial." *U.S. v. Ramos*, 810 F.2d at 312–13 (quoting, Note, "Withdrawal of Guilty Pleas in the Federal Courts Prior to Sentencing," 27 Baylor L.Rev. 793, 799 (1975)).

Several factors have been considered in our determination that no fair and just reason exists to permit the withdrawal of defendant Rivera's guilty plea.

A critical consideration is whether the defendant voluntarily and intelligently entered into a guilty plea with full understanding of his rights and the consequences of his plea within the meaning of Rule 11. *U.S. v. Ramos*, 810 F.2d at 312; *see U.S. v. Kobrosky*, 711 F.2d at 455. In the instant case, it is clear from our own recollection and the transcript of the change of plea hearing, that the court assiduously complied with the requirements of Rule 11. *See U.S. v. Ramos*, 810 F.2d at 312, *aff'g*, *U.S. v. Acevedo–Ramos*, 619 F.Supp. at 575. During the Rule 11 hearing, the court inquired as to the voluntariness of the plea; requested statements by the defendant, defense counsel and government attorneys, and made our own observations and determination as to Rivera's competence; fully advised Rivera of all the rights and privileges and the waiver of each right; explained the potential penalties; specifically detailed the indictment and questioned Rivera as to his understanding and acknowledgement that he committed the offenses as charged; elicited a proffer by the government and considered comments by the defendant and counsel; and determined that a factual basis exists for Rivera's plea and that defendant fully understood the consequences of the change of plea. The transcript illustrates that every effort was made to insure that defendant knew what he was doing when he changed his plea to guilty.

The fact that the defendant was under the influence of medications does not automatically make him incompetent to change his plea nor render any such plea involuntary. In *Buckley*, a defendant's plea was found voluntary and competent despite the fact that when defendant rendered the plea, he had been under heavy doses of lithium. *U.S. v. Buckley*, 847 F.2d at 999. Although a defendant alleges that medication made him depressed and paranoid when he plead guilty, the court may decline to permit withdrawal of the plea where it finds no corroboration as to the claimed effect. *See U.S. v. Benavides*, 793 F.2d at 617. A comparison of defendant's demeanor at the withdrawal hearing with his men-

tal state at the time he plead guilty is relevant. *Id.* As stated when we advanced our bench ruling on August 18, 1988, we vividly recall that Rivera was alert and oriented, and participated in the court proceedings in June, in a manner similar to his behavior observed at the recent withdrawal hearing. In light of observations of the court and counsel, we agree with defendant's own admission at the Rule 11 hearing, that he had not taken any medication *of the type that might impair his ability to understand* what was happening that day. The testimony of Dr. Prieto confirms our conclusion. We find no corroboration as to the claimed effect of the medication on the voluntariness of Rivera's guilty plea.

■ Aside from the alleged influence of the medication, Rivera claims that his plea was involuntary due to his general mental state of anxiety on June 8, 1988. The court carefully observed Rivera during the three days of trial, at the change of plea, and at the recent hearing. As is reflected in the transcript of the Rule 11 hearing, defendant responded in a coherent and rational manner in the colloquy. Where a defendant alleges lack of competence at the time of plea, his interest and participation in the Rule 11 dialogue may suggest his understanding of the proceedings. *See U.S. v. Buckley,* 847 F.2d at 998–99. We reject the contention that Rivera's mental state of anxiety or depression was sufficient to negate the voluntariness of his change of plea. *See U.S. v. Ramos,* 810 F.2d at 314; *U.S. v. Serrano,* 622 F.Supp. 517, 519–20 (D.P.R.1985) (plea withdrawal denied despite defendant's allegations that he was taking medication, had heart condition, was under great stress, had family member who was very ill, and that alcohol and medication caused hypnotic state). We decline to accept Rivera's assertion that the combined effects of medication and the stress and anxiety produced by his alleged lunch recess conversation with his mother on or about June 8, 1988, constitute a fair and just reason to permit the withdrawal of his plea entered on that date.

■ Ineffective assistance of counsel is asserted as a ground for withdrawal of defendant Rivera's guilty plea. "Although it is possible for inadequate assistance by an attorney to render a guilty plea involuntary and thus a nullity, such ineffective representation was not afforded to [Rivera]." *U.S. v. Panzardi–Alvarez,* 678 F.Supp. 353, 364 (D.P.R.1988) (determination in context of a 28 U.S.C. § 2255 petition). The standard for evaluating a claim of ineffective assistance of counsel in the context of a Rule 32(d) presentence challenge to a guilty plea is the two-pronged test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *U.S. v. Ramos,* 810 F.2d at 314; *see Hill v. Lockhart,* 474 U.S. 52, 57, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Defendant must demonstrate first, that "counsel's representation fell below an objective standard of reasonableness," *Hill v. Lockhart,* 474 U.S. at 57, 106 S.Ct. at 369 (*quoting, Strickland,* 466 U.S. at 687–88, 104 S.Ct. at 2064–65), and second, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.,* 474 U.S. at 59, 106 S.Ct. at 370. *See U.S. v. Ramos,* 810 F.2d at 314; *U.S. v. Panzardi–Alvarez,* 678 F.Supp. at 364. Defendant has failed to persuade us as to either prong.

■ As set forth above, the evidence clearly illustrated that attorney Noriega did meet with defendant on numerous occasions to discuss the case and adequately prepared as required. Noriega thoroughly reviewed the tapes and investigated the evidence originally held by defendant's accountant. We find that Noriega did not misrepresent the status of the defense. It further appears that Noriega did not refuse to resign, but patiently remained as counsel at Rivera's request. We note that in Rivera's sworn testimony before this court at the Rule 11 hearing, the defendant responded that he was satisfied with the work done by attorney Noriega, that he had been given ample opportunity to discuss the case with his attorney and had further discussed the decision to plead guilty. *See* COP at p. 6. There is no credible evidence to support a claim that

Noriega's representation fell below an objective standard of reasonableness, nor does the record support that but for the alleged errors by Noriega, that defendant would have gone to trial. Accordingly, we find that Rivera's claim of ineffective assistance of counsel is meritless, and provides no basis for a withdrawal of his guilty plea.

The time interval between the guilty plea and the filing of the motion to withdraw is also an element to be considered. A prompt withdrawal or a "swift change of heart" may indicate that the plea was entered in haste or confusion. *U.S. v. Benavides*, 793 F.2d at 617–618; *see U.S. v. Triplett*, 828 F.2d at 1197; *U.S. v. Ramos*, 810 F.2d at 312. The relatively lengthy delay of seven weeks which passed before Rivera filed his motion to withdraw mitigates against a finding of confusion. *See U.S. v. Ramos*, 810 F.2d at 312–13 (13–day delay does not indicate swift change of heart) (see cases cited therein); *U.S. v. Kobrosky*, 711 F.2d at 456 (three-week interval indicates defendant neither confused nor unfairly pressured).

Another factor for consideration is whether the defendant asserted his legal innocence at the time of the guilty plea. *U.S. v. Ramos*, 810 F.2d at 312. The instant case does not involve a situation where a defendant has made a tactical guilty plea and continues to assert his innocence. *Id.; U.S. v. Kobrosky*, 711 F.2d at 455; *see North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Although Rivera has made references to certain exculpatory information, no insight has been provided as to any credible evidence. *See U.S. v. Ramos*, 810 F.2d at 313. The evidence allegedly not obtained by Noriega appears to be "neither fresh nor particularly exculpatory nor previously withheld by the government." *U.S. v. Kobrosky*, 711 F.2d at 456. The evidence in the hands of Rivera's accountant had been turned over to the government and the accountant was to appear as a government witness. As discussed above, Noriega testified that the government showed him the accounting records and evidence pertaining to Rivera's accumulation of the properties at issue.

Lastly, defendant's testimony at the withdrawal hearing arguably raised the issue that when he executed his guilty plea he believed that such plea was made pursuant to previously discussed proposed plea agreements. In other words, Rivera thereby suggests that he did not fully understand the consequences of his change of plea. Such allegation is not credible. Attorney Noriega's testimony at the withdrawal hearing illustrated that Rivera did not plead guilty with the misapprehension that he was pleading pursuant to a plea agreement. Rivera's sworn testimony during the plea colloquy reflects that he understood that he was made no promises in connection with his guilty plea. *See* COP at pp. 43–44.

The court may also consider any prejudice to the government which could result from a plea withdrawal. *U.S. v. Kobrosky*, 711 F.2d at 455. The government has asserted that it would suffer certain prejudice if required to reassemble its evidence and witnesses at this time. In any event, where a defendant has failed to advance a "fair and just" reason to withdraw his plea, as in the instant case, an analysis of potential prejudice is unnecessary. *See U.S. v. Ramos*, 810 F.2d at 313, 315; *U.S. v. Benavides*, 793 F.2d at 617.

### Conclusion

Accordingly, we find that defendant Rivera voluntarily plead guilty on June 8, 1988 with a full understanding of his rights and the consequences of the plea, and that Rivera was competent to execute such plea. We also find that Rivera's claim of ineffective assistance of counsel is without merit. Defendant has failed to meet his burden of demonstrating a "fair and just" reason to withdraw his plea of guilty entered in this case.

The motion to withdraw the guilty plea of defendant Héctor Rivera Martínez is hereby DENIED as of August 18, 1988.

IT IS SO ORDERED.