UNITED STATES of America, Appellee,

v.

Giuseppe PELLERITO, a/k/a Joseph
El Italiano, Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Hector RIVERA–MARTINEZ,
a/k/a El Men.

Nos. 88–2068, 88–2091.

United States Court of Appeals,
First Circuit.

Heard April 6, 1989.

Decided June 30, 1989.

Rehearing and Rehearing En Banc Denied
in No. 88–2091 Sept. 5, 1989.

Frank A. Rubino, Coconut Grove, Fla., with whom Mark Anthony Cristini was on brief, for appellant, Giuseppe Pellerito.

Carlos Lopez De Azua for appellant, Hector Rivera–Martinez.

Everett M. de Jesus, Asst. U.S. Atty., Dept. of Justice, with whom Daniel F. Lo-

pez–Romo, U.S. Atty., Hato Rey, P.R., was on briefs, for the U.S.

Before CAMPBELL, Chief Judge, and BREYER and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Some three dozen individuals, including appellants Hector Rivera–Martinez and Giuseppe Pellerito, were charged in a multicount indictment as members of a huge drug ring allegedly headed by Rivera–Martinez. As trial approached, the district court entertained a steady stream of guilty pleas from various defendants. Trial began on June 6, 1988 and ended abruptly when the remaining defendants admitted their culpability. Appellants were among the last holdouts: Pellerito pled guilty to the sole count in which he was charged on June 7 and Rivera–Martinez pled to four counts the next day.[1]

The jury was discharged and the trial dismantled, but the matter was far from finished. Prior to sentencing, appellants filed motions seeking to withdraw their pleas. The district court held separate evidentiary hearings and denied each motion by written opinion. *United States v. Pellerito*, 701 F.Supp. 279 (D.P.R.1988); *United States v. Rivera–Martinez*, 693 F.Supp. 1358 (D.P.R.1988). The court also denied certain further motions filed by Rivera–Martinez. Defendants' ensuing appeals were consolidated for briefing and argument.

We begin our analysis by rehearsing certain legal principles applicable to both appeals. Then, we discuss separately the defendants' reasons for plea withdrawal and the lower court's rulings. Finally, we deal with the denial of Rivera–Martinez's last round of motions.

## I. APPLICABLE LAW

The plea-withdrawal test, the yardstick for measuring claims of ineffective legal assistance, and the standard of appellate review are relevant to both of these appeals. We summarize the applicable law.

### A. *Plea Withdrawal.*

Having chosen to plead guilty, a defendant possesses no absolute right to retract his plea. *See United States v. Buckley*, 847 F.2d 991, 998 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989); *United States v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983). When he tries to do so, the rule of decision depends upon the timing of the attempt. When, as here, a defendant asks to annul his plea prior to sentencing, the court should permit withdrawal if there is a "fair and just reason" for doing so. Fed.R.Crim. P. 32(d); *Buckley*, 847 F.2d at 998; *Kobrosky*, 711 F.2d at 454. In determining whether a fair and just reason has been proffered, a number of factors figure in the equation, including (1) the force and plausibility of the reason; (2) the timing of defendant's change of heart; (3) whether defendant has asserted his legal innocence; (4) whether the parties had reached (or breached) a plea bargain; and (5) most importantly, whether the defendant's guilty plea can, in light of the proffered reason and the disclosed circumstances, still be regarded as voluntary, intelligent, and otherwise in conformity with Fed.R. Crim.P. 11. *See generally Buckley*, 847 F.2d at 999; *United States v. Daniels*, 821 F.2d 76, 79–80 (1st Cir.1987); *United States v. Ramos*, 810 F.2d 308, 312–13 (1st Cir.1987); *Kobrosky*, 711 F.2d at 455. If a defendant advances a plausible reason, the court should also weigh the prejudice, if any, to the government. *Ramos*, 810 F.2d at 313; *Kobrosky*, 711 F.2d at 455.

### B. *Ineffective Assistance.*

In this case, both appellants—albeit on different facts—charge that deficient legal representation contributed to their "mistaken" guilty pleas. Even prior to sentencing, defendants who maintain such a position must meet the accepted tests for

---

1. Although Rivera–Martinez was charged in a total of seven counts, the government dismissed three of them.

ineffective assistance before being allowed to withdraw pleas on this basis. *Ramos,* 810 F.2d at 314. Specifically, a defendant must demonstrate both that counsel's representation "fell below an objective level of reasonableness," and that cognizable prejudice flowed therefrom, *i.e.,* that he "would not have pleaded guilty and would have insisted on going to trial" if not for counsel's shortcomings. *Hill v. Lockhart,* 474 U.S. 52, 57–59, 106 S.Ct. 366, 370, 88 L.Ed. 2d 203 (1985). *See also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

### C. *Appellate Review.*

▆ In cases of this genre, courts of appeals should accord district courts' decisionmaking considerable respect. Confronted with an attempt at plea retraction, the trial judge must make an idiocratic, particularistic, factbound assessment—an assessment which is facilitated because the judge has overseen pretrial proceedings, conducted the Rule 11 inquiries, accepted the original guilty plea, and heard at first hand the reasons bearing upon its withdrawal. Appellate courts, being less directly familiar with the circumstances and lacking the district judge's "feel" for the case, ought ordinarily to defer to the decision reached on the front lines. It follows that, other than for errors of law, we will disturb the trial judge's refusal to allow plea withdrawals only for demonstrable abuse of discretion. *See Buckley,* 847 F.2d at 998; *Kobrosky,* 711 F.2d at 454; *see generally Independent Oil & Chemical Workers v. Procter & Gamble Mfg. Co.,* 864 F.2d 927, 929 (1st Cir.1988) (describing test for abuse of judicial discretion); *United States v. Hastings,* 847 F.2d 920, 924 (1st Cir.) (same), *cert. denied,* —— U.S. ——, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). The trial court's subsidiary factfinding in connection with plea-withdrawal motions can be set aside only for clear error. As in kindred contexts, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly er-

roneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

With this short prelude, we turn to the first of the appeals.

## II. PELLERITO'S REASONS

The district court concluded that Pellerito's guilty plea was fully informed and competently made; that his claims of ineffective assistance were meritless; and consequently, that he had failed to evince a fair and just reason for retraction. *See Pellerito,* 701 F.Supp. at 296. We treat independently with two issues which appellant hawks with especial fervor, and then assay the balance of relevant situational factors.

### A. *The "Misunderstood" Plea Bargain.*

▆ Pellerito claims that his trial attorney, Emanuel Moore, led him to believe that, as part of the plea agreement, he would receive immunity from threatened prosecutions in New York and Florida. He contends alternatively that, for whatever reason, he thought (erroneously) that further prosecutions in other jurisdictions would be barred, thus rendering his guilty plea involuntary.[2] The district court found defendant's claim that Moore misled him to be "not credible." *Id.* at 294. Among other things, the court pointed to testimony by Pellerito's local counsel, attorney Julio Morales–Sanchez, that it had been explained to Pellerito "that the plea agreement was not binding on other jurisdictions." *Id.* The decision to believe Morales–Sanchez on this point, rather than appellant, was the trial judge's to make and should not be disturbed.

Defendant's professed belief that, regardless of what he was told, he would be held harmless from prosecutions in other jurisdictions, is material only to the extent it was objectively reasonable. *United States v. Hogan,* 862 F.2d 386, 388 (1st Cir.1988). Here, it was not. First, Pelleri-

---

**2.** We note in passing that Pellerito's claims embody a hypothetical element. To date, there is no suggestion that charges have been brought against Pellerito elsewhere, and when queried at oral argument, his appellate counsel could identify none.

to had ample incentive to plead wholly apart from fear of mushrooming prosecutions. Because the Anti–Drug Abuse Act of 1986, 21 U.S.C. § 960, did not apply to the plea as structured, and the plea agreement obligated the prosecutor to recommend a maximum sentence of 18 years (a recommendation that the trial court followed), appellant's potential exposure was lowered materially.[3]

Second, during the change-of-plea hearing, defendant assured the district judge that no other promises had been made, no other terms negotiated. There was no suggestion that immunity from prosecution elsewhere had been considered, let alone guaranteed. As the court below perspicaciously observed, "it strains credibility to suggest that [defendant's supposed] misconception as to the grant of immunity would not have come to light" in the lengthy, detailed Rule 11 colloquy. *Pellerito*, 701 F.Supp. at 295. We will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so.

It is true that, at one point during the Rule 11 proceedings, defendant stated that he was pleading to "conspiracy enterprise in Puerto Rico, New York, New Jersey and Florida." Counsel seizes upon this single locution and claims it proves that Pellerito believed his plea was intended to foreclose prosecution in other venues. It is possible that such an inference might be drawn from Pellerito's response—but it is certainly not the only permissible inference, nor even the most plausible one. The defendant was pleading guilty to participation in a multistate conspiracy. He could simply have been describing the places where, in his view, the drug-trafficking combine operated. At any rate, we are reluctant to place the weight of decision on an isolated reference in a long and thorough Rule 11 inquiry, in the process overruling the contrary determination of the judge who presided at both the plea-tendering and plea-withdrawal hearings, and who saw and heard the principals. Having read the entire record, we believe there was ample support for the district court's finding that defendant's claimed failure to understand the terms of his plea agreement was imaginary rather than real.[4] *Pellerito*, 701 F.Supp. at 295.

### B. *Ineffective Assistance.*

Pellerito shuttled lawyers in and out as he readied his defense. He was represented initially by attorney Segal, then by attorneys Fisher and Bronson, then by attorney Moore, and finally by his present counsel. He was also represented by local counsel in the person of Morales–Sanchez, a former United States Attorney. At the time of the plea-withdrawal hearing, Pellerito asserted that the majority of these lawyers represented him inexpertly. Most of these claims were so conclusively resolved by the district court, *e.g., id.* at 291–92 (discussing allegedly ineffective assistance of Messrs. Fisher, Bronson, and Morales–Sanchez) that adding an appellate gloss would be carrying coals to Newcastle. In our view, only two aspects of the jeremiad warrant further comment.

■ 1. *The Tapes.* Telephone interceptions formed a centerpiece of the prosecu-

---

**3.** For a fuller explication of this point, *see Pellerito*, 701 F.Supp. at 289–90.

**4.** Counsel's suggestion, contained in appellant's brief and repeated at oral argument, that Pellerito had a "language problem" and was "fumbling" in his efforts to speak and comprehend English, borders on the unprofessional. The district judge commented upon Pellerito's fluent use of English in court and in recorded conversations, elicited from several witnesses testimony that Pellerito spoke English competently, and took a series of prophylactic measures designed to level any possible language barrier. Indeed, the court's solicitude and concern were sufficiently marked that, at the plea-withdrawal hearing, appellant's present counsel set the matter to rest, stating:

> Nowhere in my motion do I raise a language issue. And I will be happy to say [to] this Court and any appellate court, language is not, and I repeat, N–O–T, the issue we are here about today.

Counsel may have forgotten his vow, but we are mindful of it. We reject this argument summarily, reminding the attorney that this court does, and we repeat, D–O–E–S, read the record on appeal.

tion's case against many of the defendants, Pellerito included. Appellant now says that his attorneys should have tried to suppress the tape recordings commemorating these conversations. The argument, tonitruously phrased in emphatic terms, contains abundant sound and fury, but signifies precious little. In the first place, Pellerito has shown no prejudice attributable to the absence of a suppression motion. Although present counsel, in a rote recital, lists numerous ways in which the fruits of electronic surveillance can be challenged, he offers not a scintilla of evidence to indicate that the particular tapes which incriminated Pellerito were vulnerable in any respect.

In the second place, reality debunks the suggestion. The record on appeal does not reflect that any of the other defendants in this thirty-five defendant case were successful in quashing the telephone intercepts. Attorney Fisher testified that he and his staff expended enormous time and effort searching for a plausible way to block the tapes (and the damning evidence they contained). Fisher ultimately concluded that there was no "legitimate shot" at achieving suppression. The district court credited this evidence. *Pellerito,* 701 F.Supp. at 287. It was entitled to do so. Fisher's decision not to seek suppression was reasonable. "Effectiveness" does not require that counsel jump through every conceivable hoop, or engage in futile exercises. *See United States v. Cronic,* 466 U.S. 648, 656 n. 19, 104 S.Ct. 2039, 2045 n. 19, 80 L.Ed.2d 657 (1984) ("useless charade" not required); *United States v. Levy,* 870 F.2d 37, 38 (1st Cir.1989) (counsel need not advocate "meritless defense") (citing *Cronic*). That another lawyer might have taken a different slant is beside the point; as the Court has taught, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in ineffective assistance litigation. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

■ 2. *Preparation Time.* Pellerito also asserted that Moore, his trial counsel, did not have adequate time to prepare a solid defense. Pellerito discharged Fisher and hired Moore on Thursday, June 2, knowing that trial was scheduled to start on June 6. The district court found that, notwithstanding his late entry into the case, Moore was ready for trial. *Pellerito,* 701 F.Supp. at 292–93. The finding, we think, is sustainable.

Moore had been an attorney for 22 years, specializing for much of that time in criminal defense. Earlier in his career, he had been both a federal and state prosecutor. He had tried hundreds of matters. And, he was a stranger neither to the client nor to the cause: Moore had known Pellerito for six years and was familiar with many details of the case by reason of his association with Mario Malerba, a codefendant's lawyer. In addition, Moore had, and diligently utilized, many resources. Attorney Gonzalez, an associate, worked with him. Fisher, Bronson, Malerba, and Morales–Sanchez made themselves available and briefed Moore on various aspects of the case. Bronson and Fisher provided all the discovery material obtained from the government (including transcripts of the taped telephone calls). The district judge allowed Moore, Pellerito, Malerba, and Morales–Sanchez to listen to the tapes before trial began.

Certainly, available preparation time was in relatively short supply and the timing less than ideal. Yet Moore, at least, harbored no doubt that by Monday he was fully prepared. He testified:

> I came ready to go to trial. There was no doubt about that.... I felt very comfortable with going to trial on that day.

When a trial date has been set, a defendant who elects to change counsel at the eleventh hour is deemed to be aware of the need for, and rigors of, proper preparation. Counsel who chooses to accept the engagement is equally on notice. Lawyers with different backgrounds, work habits, experience, and skill require differing amounts of time properly to ready a case for trial. In this instance, Moore appears to have responded to the exigencies of the moment in a thoroughly professional manner. Particularly given the lawyer's long experience

and unquestioned expertise in criminal law, the district court was entitled to conclude that Moore's trial preparation, though pressured, fell comfortably within the boundaries of reasonably effective representation. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *see also Cronic,* 466 U.S. at 665–66, 104 S.Ct. at 2050–51 (absent showing of some specific error, ineffective assistance cannot be presumed from, *inter alia,* brevity of preparation period).

### C. *Calibrating the Scales.*

Having determined that Pellerito's principal points lack merit, review of the district court's handling of relevant situational factors need not detain us long. The opinion below is a model of the careful, balanced inquiry that plea-withdrawal attempts demand: it limns the circumstances of the plea; fully addresses defendant's arguments; sets out explicit findings of fact; and meticulously documents those findings. We endorse the findings and conclusions unreservedly.

In Pellerito's case, when the record is read fully and in context, the scales tip markedly in the prosecution's favor. For one thing, Pellerito never asserted that he was innocent of the charges to which he pled. For another thing, even though one of his current lawyers was present at the Rule 11 hearing, he did not move for withdrawal until approximately eight weeks had elapsed. The prosecution, laboriously assembled over time, was by then dismantled. Third, the plea was part of a *quid pro quo,* explicitly articulated and fully achieved. In light of the totality of the circumstances, including the facts to which we have referred, the district court cannot be said to have misused its discretion in concluding that Pellerito's plea was voluntary, sentient, and intelligently given, and in discerning no fair and just reason for retraction.

### III. RIVERA–MARTINEZ'S REASONS

Rivera–Martinez also advances a host of grounds for granting his plea-withdrawal motion. Mindful of the district court's detailed discussion of the matter, *Rivera–Martinez,* 693 F.Supp. at 1363–65, we can be correspondingly brief. We nevertheless consider each of the three main pillars upon which assigned error rests, as well as scrutinizing the district court's balancing of relevant factors.

### A. *Family Pressure.*

Rivera–Martinez contends that his change of plea was the product of "duress" in that he was "coerced by the stressful situation" to plead guilty. Specifically, defendant claims to have tendered his plea while in an agitated emotional state brought on by telephone conversations with his hospitalized mother (who was also under indictment). Defendant says that he yielded to his mother's urging, and calls attention to his statement during the Rule 11 hearing that his "family has suffered too much."

Rivera–Martinez misperceives the focus of the plea-retraction inquiry: while evidence of this stripe is probative of an accused's *motivation* for pleading guilty, it does not necessarily show coercion, duress, or involuntariness. Criminal prosecutions are stressful experiences for nearly all concerned—particularly defendants and their families. It is to be expected that feelings will run strong within a family unit and that loved ones will advise, counsel, implore, beseech, and exhort defendants to take—or abjure—myriad courses of action. The relevant question for plea withdrawal is not whether the accused was sensitive to external considerations—many defendants are—but instead whether the decision to plead was voluntary, *i.e.,* a product of free will. *See Ramos,* 810 F.2d at 314; *see also Buckley,* 847 F.2d at 1000 n. 6 (threat that brother otherwise might be indicted "did not make [defendant's] plea involuntary as a matter of law"); *Wojtowicz v. United States,* 550 F.2d 786, 792 (2d Cir.) (rejecting intra-familial "coercion" as basis for plea retraction), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2938, 53 L.Ed.2d 1071 (1977).

In this case, the district court found that defendant's plea was not the product of coercive or debilitating emotional strain. *Rivera–Martinez,* 693 F.Supp. at 1364.

That finding derives abundant record support. The Rule 11 inquiry was searching, a circumstance of some importance. *See Buckley*, 847 F.2d at 999 (thorough dialogue with defendant at Rule 11 hearing bolsters district court's findings); *Ramos*, 810 F.2d at 312 (similar). The likelihood that the change of plea was studied, rather than the product of an emotional outburst, is strengthened by a medley of other circumstances: defendant has not claimed to be innocent of the charges to which he pled guilty; he waited a full seven weeks before moving to withdraw his guilty plea; he produced no evidence of distraction apart from his naked assertion; and his responses during the Rule 11 hearing, in the aggregate, demonstrate a grasp of the issues and a high probability that the plea was volitional and considered. *See United States v. Crosby*, 714 F.2d 185, 192 (1st Cir.1983), *cert. denied*, 464 U.S. 1045, 104 S.Ct. 716, 79 L.Ed.2d 178 (1984).

### B. *Prescription Drugs.*

■ When Rivera–Martinez pled guilty, the district court asked whether he had taken any medication that might impair his ability to understand the proceedings. Defendant replied in the negative. He did not tell the judge that while in prison awaiting trial he had been taking an extensive regimen of prescription drugs. According to defendant's physician, these were for the most part sedatives and anti-anxiety agents. Rivera–Martinez disclosed the truth at the plea-withdrawal hearing, asking to be relieved of his plea because of this circumstance. Finding "no corroboration as to the claimed effect of the medication on the voluntariness" of the plea, the district court rejected the request. *Rivera–Martinez*, 693 F.Supp. at 1364. There was no error.

The mere fact that Rivera–Martinez took potentially mood-altering medication is not sufficient to vitiate his plea. There must be some evidence that the medication af-

fected his rationality. *See Buckley*, 847 F.2d at 999–1000; *United States v. Benavides*, 793 F.2d 612, 617 (5th Cir.), *cert. denied*, 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986); *see also United States v. Press*, 384 F.2d 955, 956 & n. 3 (3d Cir.1967) (per curiam) (denial of plea-retraction motion upheld because defendant produced no evidence confirming that he suffered claimed "fit of depression"). Here, the only medical evidence—the testimony of the treating physician, Dr. Prieto—conclusively refuted defendant's theorem, making manifest that the medications had no effect on Rivera–Martinez's alertness or powers of concentration. Considering that Dr. Prieto treated defendant frequently, saw him on the day of the guilty plea, and testified that he seemed "competent" and "sure of what he was saying" at the time, the court below was amply justified in determining that the medicine worked no impairment of defendant's cognitive processes.[5]

### C. *Ineffective Assistance.*

■ Defendant argues vociferously that one of his attorneys, Carlos Noriega, was ineffectual. He claims, among other things, that Noriega led him down a primrose path, lulling him into a false sense of security while doing nothing to arm his defense. Rivera–Martinez also complains that Noriega failed to follow instructions. These accusations reduce to a swearing match: Noriega testified at the plea-withdrawal hearing, specifically addressing and firmly rebutting each charge. The district court, we think, was entitled to believe the lawyer rather than the client.

Noriega, a veteran practitioner and criminal-law professor, said that he spent more than 200 hours reviewing the evidence. His trial preparation, as he described it, touched all the customary bases. To be sure, Noriega's narrative leaves little question but that he had a difficult client. Rivera–Martinez frequently made requests that were extraordinary, irregular, or im-

---

**5.** The district court's finding was likewise supported by Noriega's testimony that his client was competent to plead, and by the judge's personal recollection that the defendant "was alert and oriented, and participated in the [Rule 11] proceedings ... in a manner similar to his behavior observed at the recent withdrawal hearing." *Rivera–Martinez*, 693 F.Supp. at 1364. Although perhaps supererogatory, we list these items for the sake of completeness.

possible to fulfill. But, a defendant is entitled to the lawyerly exercise of reasonable skill and diligence—not to a unquestioning slave in a three-piece suit who will do whatever the client bids, no matter how farfetched. Here, we see no indication that Noriega failed to take any action fairly necessitated by the demands of the case. We have searched the record as to each incident of which appellant complains. Most of the complaints are little more than carping born of the disappointment understandably attendant to a stiff, though lawful, sentence. We need not review specific remonstrances in any detail.[6] Suffice it to say that appellant has not established that these incidents, or any other action or inaction on Noriega's part, taken singly or collectively, materially prejudiced the defense.

Rivera–Martinez also assails Noriega's pretrial "assurances" that the defense would prevail. Noriega testified that he made no such representations, branding Rivera–Martinez's account "absolutely false." Rivera–Martinez himself during the Rule 11 colloquy, assured the court that he was satisfied with Noriega's work on his behalf—an improbable response for someone who, as he would now have it, had been "demoralized" by counsel's egregious shortcomings. When an accused seeks to withdraw a guilty plea, the court is not obliged to treat self-serving accounts as gospel. In this instance, the judge was well within his rights in refusing to accept defendant's recollection of the assurances given to him.

To cap the bottle, Rivera–Martinez's contention that Noriega euchred him into entering the guilty plea is so insubstantial as to make quicksand seem like granite. Noriega testified that his client had sought a plea bargain from the very beginning of the case. No agreement could be reached. Trial began. Rivera–Martinez, on his own initiative, decided at that time to plead guilty, without informing his lawyer (who

first found out about the impending change of plea from a prosecutor). Although Noriega cautioned defendant that, absent a plea agreement, he would be "submitting [himself] to the mercy of the Court," Rivera–Martinez persisted in pleading guilty. The Rule 11 colloquy bears out Noriega's version. When asked by the district judge if counsel had advised him to plead guilty, Rivera–Martinez responded: "I was the one who asked him to plead guilty." If counsel was ineffective in any sense, it was only because the client rendered him so, first by keeping Noriega in the dark, and then, by refusing to heed his advice. That is not the sort of "ineffectiveness" for which relief can be granted.

In fine, the record shows clearly that, facing a prosecution case so strong as to be overwhelming, and forced to cope with a cross-grained client, Noriega represented Rivera–Martinez as effectively as the circumstances would allow. Defendant's allegations to the contrary are altogether bootless.

### D. *Calibrating the Scales.*

Once Rivera–Martinez's flagship assertions are set to rest, there is scant question as to the supportability of the result reached below. Virtually all the variables in the plea-withdrawal calculus cut against the defendant. We have already alluded to many of the pertinent factors, *e.g.*, lack of any plausible reason to justify retraction, absence of any assertion of innocence, delay in seeking relief. Nothing more need be added. The district court's discussion is comprehensive, *see Rivera–Martinez*, 693 F.Supp. at 1363–65, and its determination that appellant advanced no fair and just reason for disclaiming his guilty plea is beyond reproof.

## IV. THE LAST–DITCH MOTIONS

Rivera–Martinez has yet another string to his bow. After the district court refused

6. We mention but two examples. When Noriega was asked to locate an accountant who defendant professed could exculpate him, Noriega found that the accountant was a prosecution witness and the books which he kept for appellant had been seized by the government. When defendant instructed the lawyer to travel to New York in an effort to obtain evidence of Rivera–Martinez's treatment for drug addiction in 1968, Noriega declined. No funds were made available to defray the cost of the trip, and the evidentiary relevance of treatment so long ago was extremely dubious.

to allow retraction of his guilty plea,[7] Rivera–Martinez filed a motion (Motion No. 1) requesting (a) psychiatric and psychological examinations, and (b) a competency hearing. The judge denied Motion No. 1, stating that there was "ample evidence ... on the subject of competency," and "no reasonable cause to believe that the defendant is suffering from mental disease or a defect rendering him incapable to understand the nature and consequences of these proceedings." On September 9, defendant moved for reconsideration (Motion No. 2) and simultaneously filed a further motion (Motion No. 3) informing the court that he had retained Dr. Carol Romey, a clinical psychologist. Motion No. 3 requested that Dr. Romey be provided with Rivera–Martinez's medical records and permitted to conduct an evaluative interview.[8] Motions No. 2 and 3 were summarily denied.

### A. *The Applicable Standard.*

■ Our consideration of these orders begins with 18 U.S.C. § 4241,[9] a statute designed to reflect the deeply-rooted idea that a person "whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975). The need for competency survives trial and extends through the sentencing phase of a criminal proceeding. *See, e.g., Hall v. United States*, 410 F.2d 653, 658 & n. 2 (4th Cir.) (incompetent defendant may not be "effectively present" at sentencing; passing sentence under such conditions might violate due process), *cert. denied*, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 436 (1969). As sentencing approaches and occurs, the defendant's best interest—and, indeed, the public interest—requires that he be capable of assisting his counsel and his cause. The Criminal Rules explicitly provide for a convicted defendant's continued participation in the adversary process, for example, through critical evaluation of the presentence investigation report, *see* Fed.R.Crim. P. 32(a)(1)(A), and allocution at time of sentencing, *see* Fed.R.Crim.P. 32(a)(1)(C). These activities are of considerable import. As Justice Frankfurter wrote anent allocution: "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961) (plurality opinion). Surely, the sentencing process necessitates that the defendant possess both a "present ability to consult with [a] lawyer with a reasonable degree of rational understanding," and a "rational as well as factual understanding of the proceedings." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam) (defining competence to stand trial).

Notwithstanding the salience of this principle, a trial judge is not required to grant every motion questioning an accused's com-

---

7. Initially, the court denied the plea-withdrawal motion in an *ore tenus* decision on August 18, 1988. The court filed its written opinion on September 2, fleshing out its earlier bench decision. Motion No. 1 was docketed on August 25, 1988.

8. The judge's permission was necessary because, without a court order, prison officials would not allow the psychologist to interview Rivera–Martinez (who was then in custody).

9. The statute provides in pertinent part:
   (a) *Motion to determine competency of defendant.*—At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.
   (b) *Psychiatric or psychological examination and report.*—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to [other provisions of the law].
   18 U.S.C. § 4241.

petency. The governing statute operates on two levels: 18 U.S.C. § 4241(a) authorizes the court to hold evidentiary hearings in which competency may be fully explored, and section 4241(b) permits examinations to be undertaken. There is no *automatic* entitlement to a competency hearing at any stage; to invoke the anodyne of section 4241(a), a threshold showing must first be made. *See, e.g., Wojtowicz,* 550 F.2d at 790 (hearing necessary if defendant furnishes "sufficiently detailed and controverted factual allegations" which, if true, would indicate incompetency). Motions under section 4241(b) serve several purposes, one being to ascertain whether there is enough reason to warrant inquiry into the facts, that is, to justify holding an evidentiary hearing under section 4241(a). We believe that such exploratory motions should be allowed with some liberality.

■■■■■ When there has been no previous competency hearing, appellate courts should review denial of an examination request scrupulously in order to ensure that the defendant's rights are safeguarded. *See United States v. Johns,* 728 F.2d 953, 956 (7th Cir.1984) ("when there has been no psychiatric examination or judicial determination, our review is comprehensive"); *see also United States v. Renfroe,* 825 F.2d 763, 766 (3d Cir.1987) (similar). Where, as here, the defense has engaged a qualified expert and is willing and able to defray the expense, there will typically be little reason to deny an initial request for psychiatric evaluation, if timely. After all, the public has a vital stake in assuring the evenhanded availability of adequate procedural safeguards and thereby preventing incompetent persons from being held to the same standards as other criminal defendants. *See generally United States v. Auen,* 846 F.2d 872, 877 (2d Cir.1988).

### B. *Discussion.*

■■■ Applying these principles, we think it rather clear that the court below erred in denying Motion No. 3.[10] In essence, that motion requested only that defendant, at his own expense, be allowed to have a qualified psychologist conduct a mental examination. Given the timing, honoring the motion would have worked little discernible prejudice to either court or prosecution. Sentencing took place on October 11, 1988. There is no indication that Dr. Romey could not have performed her examination and filed her report prior thereto. Conversely, the defendant's interest was great. He was sentenced to life imprisonment and fined $100,000.

Then, too, the request seems to have been not entirely a shot in the dark. Defendant alleged in Motion No. 1 that he was a long-time drug abuser; that he had been treated previously for mental illness; and that one of his former attorneys had stated under oath that the "imbalance in [defendant's] personality" affected his cooperation with counsel. Rivera–Martinez's medicinal regimen was at that point a matter of record. *See supra* Part III(B). Under the circumstances, there was no sound basis for preventing appellant from pursuing further inquiry on the subject of competency.[11] Motion No. 3 should have been granted.

To be sure, defendant cannot now revivify his plea-withdrawal motion. Rivera–Martinez previously raised the issue of competency to plead (vis-a-vis ingestion of prescription drugs), yet he made no request for either a competency determination or a mental examination while that motion was pending. Nor did he offer psychiatric testimony at the plea-withdrawal hearing, even though he bore the devoir of persuasion. Having opted to forgo such evidence as a

---

**10.** We need not consider—and offer no opinion on—the propriety of the court's rulings on Motions No. 1 and 2. Because Motion No. 3 should have been allowed, and the error requires vacation of sentence and further proceedings below, *see infra,* any views which we might express as to the district court's rulings on the earlier motions would be solely of academic interest.

**11.** Inexplicably, the government—which was of scant assistance to us on any issue in this case—chose to ignore the district court's rulings on the

three competency-related motions. Its brief on appeal avoids the matter entirely. Lawyers who try to slide by with a lick and a promise, or who bury their heads in the sand and refuse to address issues squarely raised on appeal, cast their profession into disrepute. Such struthious conduct disserves both the appellate court and the client. When, as in this instance, the government is the client, the conduct also disserves the public interest.

basis for plea retraction, defendant is foreclosed from belatedly questioning competency at the time of the plea. *See Ramos*, 810 F.2d at 314 ("eleventh-hour" claim that depression affected voluntariness of defendant's plea was rejected without hearing when defendant's attorneys "did not raise any concern as to his competence until the motion to withdraw was filed").

Be that as it may, remand can still serve a purpose. The final round of motions did not address Rivera–Martinez's competency at the time he pled; rather, as Motion No. 1 spelled out in some detail, defendant argued the existence of "reasonable cause to believe that [he] ... may be *presently* incompetent to understand the proceedings" (emphasis supplied). If defendant was incompetent at the time of sentencing, the proceedings should not have continued. *See Wojtowicz*, 550 F.2d at 790–91 (while defendant's allegations merited evidentiary hearing on competency at sentencing, he adduced no evidence warranting reopening issue of competency to plead).

We rule, therefore, that the district court erred in denying Motion No. 3. We consequently vacate defendant's sentence; remand so that Dr. Romey may conduct her evaluation; and direct the district court to convene a hearing if Dr. Romey's examination, together with the other facts of record, yields reasonable cause to question Rivera–Martinez's competency. The district court may proceed to resentence defendant only when and if the competency issue is resolved in the government's favor.

## V.  CONCLUSION

We need go no further. For the reasons stated, defendants' requests to retract their respective guilty pleas were altogether groundless.[12] Rivera–Martinez, however, was improperly prevented from litigating an issue anent his competency to be sentenced. His sentence must, therefore, be annulled and the case remanded for further proceedings. Because of his great familiarity with the case, we direct that the district judge who originally presided keep the case on remand, at least for the pur-

pose of supervising the further proceedings envisioned in this opinion. *See Anderson v. Cryovac, Inc.*, 862 F.2d 910, 933 (1st Cir.1988).

*In Appeal No. 88–2068, the order denying the plea-withdrawal motion is affirmed, as are the ensuing judgment and sentence.*

*In Appeal No. 88–2091, the order denying the plea-withdrawal motion is affirmed, the order denying Motion No. 3 is reversed, the sentence is vacated, and the cause is remanded for further proceedings in accordance with this opinion.*

---

**12.** Both defendants took a shotgun approach to appeal. To the extent that we have failed to mention any specific pellets, it is because they fell so wide of any meaningful mark as not to deserve discussion.