UNITED STATES of America

v.

Michael J. AUSTIN.

Crim. No. 89–00065–P.

United States District Court, D. Maine.

July 10, 1990.

Nicholas M. Gess, Asst. U.S. Atty., Portland, Me., for plaintiff.

Robert M. Napolitano, Portland, Me., for defendant.

MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA OF GUILTY PURSUANT TO Fed.R. Crim.P. 32(d)

GENE CARTER, Chief Judge.

## I.

Defendant herein was charged by criminal complaint with the offense of conspiracy to possess with intent to distribute in excess of five hundred (500) grams of cocaine in violation of title 21 U.S.C. sections 841(a)(1) and 846. Defendant was arrested on the complaint and appeared initially before the United States Magistrate.

On December 12, 1989, a grand jury returned the indictment in this matter, charging Defendant in six counts with various serious drug trafficking offenses involving substantial amounts of cocaine.[1] Defendant received court-appointed counsel under the provisions of the Criminal Justice Act. On January 16, 1990, his court-appointed counsel filed a motion to withdraw, which was denied because no substitute counsel for Defendant had appeared. On the following day, retained counsel, Sumner Lipman, Esq., filed an entry of appearance. The Court thereupon granted the motion to withdraw of Defendant's prior court-appointed counsel. The matter proceeded through motion practice.

On March 12, 1990, the Court entered its Procedural Order, scheduling the case for jury selection and trial on April 10, 1990, requiring the parties to file the usual pretrial written submissions on or before March 30, 1990, and that the Court be advised by counsel of any proposed change of plea on or before that date. The Clerk's office was advised before March 30 that the case was firm for trial. At approximately noon on April 9, 1990, the day before the matter was to proceed with jury selection and trial, Defendant appeared with his counsel and tendered a plea of guilty to each count of the indictment in an extensive and careful Rule 11 inquiry. Defendant had no plea agreement with the Government. The case was thereafter continued for preparation of a presentence re-

---

**1.** As the Court advised the Defendant at the Rule 11 inquiry, Trans. A at 12–14, Defendant faced statutory maximum sentences on Counts I and II of life imprisonment and a mandatory minimum sentence of 10 years on each of those counts; on Counts III and IV, maximum sentences of 40 years and mandatory minimum sentences of 5 years on each count; and on Counts V and VI, a maximum sentence of 20 years on each count without any mandatory minimum sentence. The sentences are subject to the United States Sentencing Commission Guidelines, of which Defendant was aware. *Id.* at 19. The proper application of the Guidelines will likely mean that all the offenses are to be "grouped" under U.S.S.C. Guidelines § 3D1.2(b)(1) and a single sentence imposed on all counts, as framed under the Guidelines. The likely application of the Guidelines had been explained to Defendant. *Id.* at 19–20. In addition, Defendant was exposed to a series of significant fines and a substantial term of supervised release, and he was aware of these elements of his prospective sentence. *Id.* at 11–14. He was also subject to $300 in mandatory felony assessments on conviction of all six counts, of which he said he was aware. *Id.* at 13.

port and the scheduling of a sentencing hearing.

On April 27, 1990, eighteen days after entry of the guilty pleas, the present Motion to Withdraw Plea of Guilty was filed by Defendant. The motion was signed by his newly retained counsel, Robert M. Napolitano, Esq. On April 30, 1990, Mr. Napolitano filed an entry of appearance, and Mr. Lipman was permitted by the Court to withdraw as counsel for Defendant.

## II.

The Government sets forth at length and in great detail in its Memoranda on the motion the procedural history briefly outlined above, a statement of the facts in respect to the conduct of the Rule 11 proceeding, and a review of the evidence adduced at the May 10, 1990 hearing on the pending motion. Government's Response to Defendant's Motion to Withdraw Guilty Plea (Docket No. 15) and Government's Post–Hearing Memorandum in Opposition to Defendant's Motion (Docket No. M6). Defendant states that he "does not take issue with the Government's recitation of the procedural history of the case, as supplied in its response to the Defendant's Motion to Withdraw Guilty Plea." Defendant's Supplementary Memorandum of Law at 1 (Docket No. M5). Further, "Defendant makes no claim that the Rule 11 proceedings were deficient in any way. The Court took care to insure that the Defendant was informed of his rights." *Id.* at 4. Defendant's only claim is "that

due to the ineffective assistance of counsel, 'he would not have pleaded guilty and insisted on going to trial'...." *Id.* (citations omitted).[2]

In light of these factual and legal concessions, there is no need to consider any contention that the Rule 11 proceeding was inadequate by any standard, or that Defendant at the time of the Rule 11 proceeding and the tender of his guilty plea, and its acceptance, did not understand any of his rights, or that Defendant was induced by any threat or promise to tender his guilty pleas against his own voluntary will. None of these claims is advanced in any way by Defendant. Defendant simply contends that he was caused to enter the guilty pleas by the allegedly incompetent performance by Mr. Lipman in giving him advice as to whether he should plead guilty.[3]

## III.

The Court has considered with care the contents of the written submissions filed on the motion and has, as well, carefully reviewed the transcripts of the Rule 11 inquiry and of the May 10th hearing on the pending motion.[4] The Court FINDS the facts to be as follows. Mr. Lipman was retained to enter the case on behalf of Defendant and replaced Defendant's previous court-appointed counsel. He reviewed that counsel's file in the matter prior to meeting initially with Defendant. Trans. B at 83. Defendant was incarcerated as of the time that Mr. Lipman assumed the de-

---

**2.** This is an ambiguous statement. The Court understands it to assert a claim that because Lipman was ineffective as counsel in rendering advice to Defendant, the Defendant entered his pleas of guilty which he would not otherwise have done.

**3.** The Court has carefully considered all of the issues that Defendant has waived by the concessions specified above and is fully satisfied that there is no basis whatever upon which Defendant can contend that there was any defect in the Rule 11 proceeding, that he was induced by any promise or threat to tender his guilty pleas, that he did not understand his rights at the time he entered his guilty pleas and had them accepted, that he did not understand his sentencing exposure under the applicable statutes and the Sentencing Guidelines, or that his guilty pleas

were anything other than the product of his own free will and voluntary decision *at the time of the Rule 11 proceeding.* The Court reaches these conclusions from its consideration of the answers given by Defendant to the Court's inquiries in the course of the proceedings on April 9, 1990, pursuant to Fed.R.Crim.P. 11 and the Court's consideration of the testimony taken out on May 10, 1990 in the hearing on Defendant's Motion to Withdraw Guilty Plea.

**4.** Citations to the transcripts are made herein as follows: Citation to the Rule 11 inquiry of April 9, 1990 is by "Trans. A ___" with the insertion of the appropriate page reference. Citation to the transcript of the hearing on the pending motion held on May 10, 1990 is by "Trans. B ___" with the insertion of the appropriate page reference.

fense of the case. *Id.* at 66. Mr. Lipman met with Defendant in person at the Penobscot County Jail and the Maine Correctional Center on at least four occasions, for periods of an hour or more each. *Id.* at 3, 66–67. He talked with Defendant numerous times by telephone, the Defendant frequently calling him collect at his office. *Id.* at 90. Detailed, serious substantive discussions were had between Mr. Lipman and Defendant on those occasions. Additionally, a paralegal and another attorney in Mr. Lipman's office also met with Defendant, at Lipman's initiative, as part of the effort to prepare the defense. *Id.* at 3–4, 92.

Mr. Lipman discussed the possibility of a plea agreement early on in his dealings with Defendant. *Id.* at 73–74. Defendant rejected any plea agreement on his part because the United States Attorney's office would require him to render full and complete cooperation as part of the consideration therefor. *Id.* Defendant declined to cooperate. *Id.* at 9, 74–75.

Mr. Lipman's preparation of the case by way of review of discovery materials provided by the Government and the ongoing production of Jencks Act information and other materials produced prior to trial by the Government was timely in view of the time of production of such information by the Government and was in all other respects a competent review. Gradually he came to the conclusion that there was no effective defense available to the charges made. Trans. B at 75–77. He reached this decision after researching, during the weekend of April 7–8, the question whether the drug quantities alleged in the indictment were essential elements of the offenses charged, required to be proved by the Government in order to convict Defendant. *Id.* at 76. Mr. Lipman's understanding, based upon that research, was that the drug quantities were not matters of defense to conviction, but were matters properly to be considered at the time of imposition of sentence. Thus, Mr. Lipman decided by Sunday, April 8, that Defendant had no legal defense to the charges made in the indictment. *Id.* Also, during that weekend, the Government provided new discovery that it had additional witnesses agreeing to testify against Defendant. *Id.*

Early in the morning on Monday, April 9, in discussions with the Assistant United States Attorney handling the case, Mr. Lipman made arrangements to have Defendant brought to the United States Marshal's lock-up at the courthouse in Portland so that he could meet with him for purposes of discussing entry of guilty pleas. Trans. B at 77–78. He met with Defendant on two occasions on that day between approximately 11:00 a.m. and noon. *Id.* at 78, 80–81. At their first meeting, which lasted from fifteen to twenty minutes, *id.* at 79,[5] Mr. Lipman ventured upon discussion with Defendant of the entry of guilty pleas. *Id.* at 79–81. In the course of that discussion, he explained to Defendant his essential rights, *id.* at 87, and described the strengths of the Government's case against him. *Id.* at 86. He explained the minimum and maximum penalties which Defendant faced on conviction. *Id.* He described the possibility that Defendant might receive some benefit from guilty pleas as being indicative of an expression of remorse. *Id.* at 87–88. Mr. Lipman's explanations and advice in these respects are found by the Court to be competent; that is, they met the objective standard of reasonable performance by reasonably proficient counsel. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); (cited as controlling in a Rule 32(d) motion in *United States v. Ramos,* 810 F.2d 308, 314 (1st Cir.1987)).

Mr. Lipman then left Defendant for a period to consider the advice that he had received. Trans. B at 80–81. There was a second conference between Mr. Lipman and Defendant in the Marshal's office before Defendant was brought to the courtroom. *Id.* Mr. Lipman understood as a result of that conference that his advice to plead guilty to all the offenses, and the

---

**5.** Defendant estimates the duration of the first meeting on April 9 at ten minutes. Trans. B at 8.

reasons for it, had been understood, accepted, and agreed to by Defendant. *Id.* at 88. Defendant was brought to the courtroom at about noon on April 9. Trans. A at title page; Trans. B at 72. Mr. Lipman was present with him in the courtroom at that time. Trans. B at 87. The judge had not then taken the bench for the conduct of the Rule 11 inquiry. *Id.* at 35. At that time, Lipman gave Defendant the written Prosecution Version of the Government's proof at trial, which he had just received from the Assistant United States Attorney. Before the judge took the bench, Defendant read the Prosecution Version and discussed it with Mr. Lipman. *Id.* at 35, 72. It is not indicated that he asked any questions of Lipman about its contents or expressed any disagreement with its contents.[6]

### IV.

■■■■■ A defendant's right to withdraw a guilty plea is not absolute. *See, e.g., United States v. Burnett,* 671 F.2d 709, 712 (2d Cir.1982). A court may, however, permit a withdrawal of a guilty plea before sentencing if the defendant makes a showing of a "fair and just reason" therefor. Fed.R. Crim.P. 32(d). Rule 32(d) codifies the United States Supreme Court's *dictum* in *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); *see* Fed.R. Crim.P. 32, Notes of Advisory Committee on Rules, 1983 Amendment. The standard for withdrawal prior to imposition of sentence is a liberal one. *United States v. Ramos,* 810 F.2d at 311. A defendant is not, however, permitted "to turn his back on his own representations to the court merely because it would suit his convenience to do so." *United States v. Pellerito,* 878 F.2d 1535, 1539 (1st Cir.1989). The "ultimate question" on an application to withdraw a guilty plea is "whether ... [Defendant's] plea was an 'intentional relinquishment or abandonment of a known right or privilege'." *United States v. Buckley,* 847 F.2d 991, 999 (1st Cir.1988) (citations omitted).

■■■ One "fair and just reason" for plea withdrawal, where demonstrated, is that entry of the plea in the first instance was involuntary as a result of the ineffective assistance of counsel. *See United States v. Pellerito,* 878 F.2d at 1539–41; *United States v. Ramos,* 810 F.2d at 313. As previously indicated, this is the only reason put forth by this Defendant for his attack upon the voluntariness of his pleas of guilty. In order to sustain this effort, the appellant must demonstrate that counsel's performance violated the rule in *Strickland* and that he has been prejudiced—that is, "but for counsel's mistakes, 'he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Ramos,* 810 F.2d at 314, *citing Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

■■■ The most serious contention put forth by Defendant, and the gravamen of his claim to withdraw the pleas, is that Defendant's pleas were not voluntarily entered because his defense counsel, Mr. Lipman, raised the matter of tendering guilty

---

**6.** At the hearing on the pending motion, Defendant attempted to assert, on cross-examination and examination by the Court, that he disputed "all" of the Prosecution Version. Trans. B at 39. The effort to sustain that assertion did not fare well for Defendant. He had initially stated in answer to an explicit question by the Assistant United States Attorney:

Q. Do you dispute any fact contained in Defendants Exhibit 1 [the Prosecution Version]?
A. Not at the moment.

*Id.* at 38. The Court undertook to clarify the import of that ambiguous answer. *Id.* at 38–41. Defendant then stated that he disputed all of the Prosecution Version. *Id.* at 39. The end result of the Court's effort was that Defendant conceded that the single statement he had finally pointed to in the Prosecution Version as untrue was, in fact, true. *Id.* at 41. The prosecutor, by further examination, established that Defendant disputed only the date that his drug dealings with a Mr. Mathon, at issue only in Count II of the Indictment, commenced. The Prosecution Version stated that they began in late 1987. *Id.* Defendant contended that they began in early 1988. *Id.* He did not dispute that the drug transactions described in the Prosecution Version took place nor any of the stated details of those transactions as provided in the Prosecution Version. *Id.* at 41–42. He acknowledged that "there is no question" but that he was "a part of the cocaine conspiracy" referred to in the Prosecution Version. *Id.* at 42–43.

pleas at the eleventh hour before trial, on April 9, 1990, affording Defendant too little

7. Defendant asserted at the May 10 hearing and in briefings by counsel on the motion various other defects of Lipman's performance which allegedly acted to bring about the guilty pleas. Specifically, he argues: (1) that he was not given sufficient time to consider the Prosecution Version of the Government's proof; (2) that he now disputes the accuracy of the Prosecution Version; (3) that Lipman inadequately prepared the defense case; (4) that he filed no response to the Government's motion *in limine;* (5) that he failed to file a trial brief; (6) that he failed to hire an investigator; (7) that Lipman's advice was affected by "a misplaced reliance on an unavailable tactic." Defendant's Supplementary Memorandum of Law at 6 (Docket No. M5); (8) that Lipman's decision to forego trial because of the unavailability of a defense based upon the quantity of drugs involved in the various counts of the indictment was deficient strategy; (9) that Lipman failed to request a continuance; and (10) that Defendant pleaded guilty without a sufficient understanding of his penalty exposure. Trans. B at 8, lines 24–25.

With respect to contentions (1) and (2), a sufficient answer is that Defendant ultimately admitted under cross-examination at the May 10 hearing that he does not dispute in any substantial aspect the contents of the Prosecution Version. Moreover, he acknowledged, at the hearing of May 10th and at the Rule 11 inquiry of April 9th, that he is in fact guilty as charged of participation in the conspiracy alleged in the indictment. *See also supra* at 8 and n. 6. With respect to contentions (3) and (4), the Court finds that Lipman was not guilty of incompetence by reason of inadequate preparation of the defense. He and others on his defense team met frequently with Defendant and passed on to him information as it was produced by the Government. They appear to have given timely and appropriate reflection to those materials. While under ideal circumstances his final preparation of the case could have been more timely, there is no sufficient showing made here that the lack of timeliness, if any, was due to any deficiency in Lipman's performance. Contentions (5) and (6) must fail because they have no causal relationship to the entry of the guilty pleas. If the case had gone to trial, these aspects of Lipman's performance might have had an adverse impact upon the Court's ruling on the issues thereby generated at trial. Here, however, the sole issue is the voluntariness of the guilty pleas at the time they were entered. In the Court's view, the failure to file a trial brief and a response to the *in limine* motion had no impact whatever upon Defendant's state of mind when considering whether to plead guilty. The record does not disclose that he was ever aware that those papers had not been filed.

The same reasoning may be applied to contention (6), that Lipman improperly failed to hire an investigator. Further, in the face of Defendant's testimony that he cannot dispute the

time to consider whether he should plead guilty.[7] It appears to be implicit in Defen-

Prosecution Version of the offense, that he makes no claim that he has a meritorious defense, or that he is legally innocent of the charges made in the indictment, and that he has conceded, on May 10, that he is guilty as charged, there is no basis to suppose that an investigator, if one had been employed, would have turned up any information that would have changed *the advice about tender of guilty pleas* given to Defendant by Lipman.

Contentions (7) and (8) also must fail. Although Lipman erroneously believed initially that the drug quantities involved in the charged offenses might be essential elements of the offenses to be proven by the Government at trial, he properly concluded that the drug quantity issue was not available as a defense, *United States v. Barnes,* 890 F.2d 545, 551 and n. 6 (1st Cir.1989), before he gave his final advice concerning the guilty pleas. Lipman's decision to counsel the foregoing of a trial because that issue was not available was not deficient performance in view of his reasonable conclusions that all other available defenses had been foreclosed by the information provided by the Government.

Lipman had no reason to entertain the idea of requesting a continuance, as is suggested in contention (9). In both of his April 9th discussions with Defendant about pleading guilty, Defendant does not appear on this record to have expressed to Lipman any confusion or misunderstanding as to the advice which he was receiving from Lipman. He made no request of Lipman for more time and did not protest the suddenness of Lipman's *volte face* in strategy. Lipman had no reason to conclude otherwise than as he did, that his advice was being understood, accepted, and agreed to by Defendant. Later in the courtroom, Defendant at no time gave any indication to Lipman that he wanted further time to consider entry of the guilty pleas. Even in the course of the Rule 11 inquiry itself, Defendant heard Lipman recommend the acceptance of the pleas on three occasions, Trans. A at 3, 9, 22, and gave no indication to the Court of any reluctance or hesitation about tendering the guilty pleas. In the face of that conduct by Defendant, there was no reason for Lipman to request a continuance and if one had been sought, in all probability it would have been denied in view of the imminence of trial.

Contention (10) is set forth in Defendant's testimony at the May 10 hearing that Lipman told him he "would look at 10 to 14 years by pleading guilty." Trans. B at 8, lines 24–25. The contention that Defendant was induced to tender guilty pleas because he was misled as to exposure to sentence is nowhere discretely briefed by Defendant. Allegations are made in Defendant's Motion to Withdraw Pleas of Guilty that Defendant was not informed of his sentencing exposure. *See* Motion (Docket No. 13) at ¶¶ 8 and 11. The record does not support these

dant's assertion that he would not have given up his right to a trial if he had had more time to consider the matter of entry of guilty pleas and the advice given to him in that respect by Mr. Lipman. The questions are whether this record shows Mr. Lipman's performance in rendering this advice to fall below the standard of performance of reasonably proficient counsel, in all the circumstances, and whether, by such deficiency in performance, Defendant was induced to tender guilty pleas which he would not otherwise have tendered.

First of all, this Defendant does not assert any claim of legal innocence or suggest that he has any meritorious defense to any of the charges against him. He has conceded to the Court not only that the Government's version of the evidence is undisputed by him, but also, that he affirmatively accepts it as substantially true. Thus, on his own version of the facts, the provision of a trial would accomplish nothing with respect to the determination of his guilt. Further, now that it has detailed information about Defendant's state of mind and level of knowledge about the factual aspects of the case, the Court is fully persuaded that Defendant understood and voluntarily accepted the advice given by Lipman to him in the discussions of April 9, recommending that he enter guilty pleas. Defendant was an adult whom Lipman found to be very intelligent. Trans. B at 90. If he wanted more time to consider the matter, it was open to him to demand it. He elected not to do so. He gave no indication to Lipman that he wanted to discuss his situation or Lipman's advice with any other person. Lipman did not harass, threaten, or by any means place any duress on Defendant in their discussions. The Court is persuaded that Defendant knew he was guilty as charged and voluntarily and of his own free will decided, admittedly in unhappy circumstances, to plead guilty and throw himself on the mercy of the Court.

Although not specifically articulated with clarity, the gist of Defendant's claim is that he was given too little time to consider the entry of guilty pleas in a criminal matter where his exposure on sentence was so great. To support this claim effectively, Defendant must show that reasonably proficient counsel would have reached the decision that there were no viable defenses available to Defendant sooner than Sunday, April 8, when Mr. Lipman did, and thus have been able to advise Defendant sooner concerning his guilty pleas. The Court concludes that this proposition fails on this record for lack of proof.

There is no evidentiary showing of any deficiency or lack of diligence in Mr. Lipman's performance in assembling the materials necessary to judge whether a meritorious defense, or any defense at all, existed. His thought process was an ongoing one, expeditiously engaged and actively pursued as the Government produced evidentiary material prior to trial. Only late in the day on Saturday or at the conclusion of his legal research on Sunday, April 8, did Mr. Lipman arrive at his conclusion that no defense was available. Trans. B at 75–77. He did so after the receipt of material FAXed to him by Government counsel on Sunday. *Id.* at 76. No showing is made that a reasonably proficient criminal attor-

---

allegations, however. The argument is without merit, in any event.

The Court finds Defendant's suggestion that Lipman did not properly advise him of his exposure on sentencing to be without foundation in the evidence. However, even if Defendant had been improperly advised, the Court clearly and specifically advised Defendant in detail as to his sentencing exposure before accepting Defendant's guilty pleas. Trans. A at 10–14. Further, Defendant acknowledged that Lipman had explained his exposure in terms similar to those employed by the Court. *Id.* at 14. Defendant further acknowledged that Lipman had explained to him the likely application of the Sentencing Commission Guidelines and that he understood the explanation. *Id.* at 19–20. While a careful Rule 11 proceeding is not insulated from attack, *see Buckley*, 847 F.2d at 999, here Lipman's testimony, which the Court accepts as highly credible, supports the conclusion that Lipman had properly advised Defendant as to the maximum penalties he faced on conviction *before* the Court did so in the Rule 11 inquiry, Trans. B at 86, and that Defendant understood the explanation. *Id.* The Court rejects as disingenuous Defendant's testimony that Lipman did not tell him "what you were facing for time," *id.* at 8, and that Lipman told him he would face a 10–14 year sentence.

ney would have reached that decision sooner than did Mr. Lipman.

No showing is made that any of the materials produced by Government counsel were tardily produced and that Mr. Lipman should have made efforts to obtain them sooner, or that such efforts would have been effective. No suggestion exists in the record that the Government had failed to produce its Rule 16 discovery materials in a timely manner. It is likely, and clearly open to reasonable inference, that the materials that Government's counsel was continuing to produce to Mr. Lipman in early April were Jencks Act, *Brady*, and *Giglio* materials which the Government was *not required to* produce at all prior to trial.

No discrete suggestion is made, in any event, that Mr. Lipman's performance was deficient because of any failure by him to obtain, as soon as due diligence allowed, the information provided by the Government which became the predicate for his conclusion that Defendant had no defense to the charges. Thus there is no evidentiary basis on which the Court can properly conclude that Defendant was required to make his decision about entry of guilty pleas on April 9, the eve of trial, or in a period of an hour and a half,[8] because of

any deficiency in Mr. Lipman's preparation of the case to the point that he made a decision about the viability of the defense.

## V.

■ The Court finds that Defendant was properly advised by Lipman, as a matter of professional judgment reasonably arrived at, that there was no available defense to any of the charges set out in the indictment. Defendant had declined the opportunity to obtain leniency by cooperation. Trans. B at 74. Lipman's counsel that he might achieve some level of leniency by pleading guilty was, in all the circumstances, legally competent advice.

For these reasons, and on the basis of the findings made above, this Court is fully satisfied that this Defendant's decision to tender guilty pleas to the six counts of the indictment herein on April 9, 1990 was a knowing and voluntary surrender of his right to trial based upon his receipt of competent advice from his retained counsel. The conduct of defense counsel in no way misled this Defendant, nor was Defendant's will overcome by any deficiency in counsel's performance. Defendant's guilty pleas herein must stand.

8. The Court finds that Defendant was exposed to Lipman's advice that he enter guilty pleas for a period of about one-and-one-half hours on April 9 before the Court accepted those pleas at 12:28 p.m. Lipman testified that he began his first meeting with Defendant on April 9 "around 10:30" a.m. Trans. B at 78. Defendant estimates that Lipman first saw him at "around 11:00" a.m. *Id.* at 5. The Court finds that the first meeting of Defendant and Lipman began around 11:00 a.m. That meeting lasted fifteen to twenty minutes, *id.* at 79, and the principal subject of discussion was Lipman's advice to Defendant that he enter guilty pleas. Defendant had at least forty minutes after the conclusion of that meeting, during which period Lipman met with him a second time, to consider Lipman's advice before he was brought to the courtroom. Then he was exposed for a period of twenty-five minutes to a searching Rule 11 inquiry by the Court, the obvious purposes of which were to determine if Defendant wished to tender guilty pleas and, if so, whether that decision on his part was arrived at voluntarily and knowingly.

The Court finds it impossible to believe, in all of the circumstances of this case, that this De-

fendant decided to tender the guilty pleas because of the pressure of time to consider Lipman's advice. Defendant had one-and-a-half hours to contemplate his decision. There appears to have been no other subject of anything like equal importance to occupy his mind during that time. He made no complaint of being pressed for time in considering Lipman's advice. He requested no additional time of Lipman. He appeared before the Court willingly and at no time gave any sign or indication of having any doubts or misunderstandings about what he was doing or his desire to plead guilty. He made no request to the Court for further time to contemplate his decision. He answered affirmatively when asked personally by the Court: "Is it correct [that] you wish to change your plea at this time from not guilty to guilty as to each of Counts I through 6 [sic] of this indictment?" *Id.* at 3. He never thereafter gave any indication throughout the further course of the inquiry of any reticence or uncertainty as to his decision to tender pleas of guilty. His decision in that respect was obviously a voluntary and "intentional relinquishment or abandonment of a known" constellation of rights. *See United States v. Buckley,* 847 F.2d 991, 999 (1st Cir.1988).

## VI.

Defendant's Motion to Withdraw Pleas of Guilty pursuant to Fed.R.Crim.P. 32(d) is hereby DENIED.

This matter is hereby ORDERED to be scheduled for a Presentence Conference upon completion and submission of the Presentence Investigation Report.